**Reversed and Remanded and Opinion filed June 2, 2016.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-15-00189-CV

---

## ERC MIDSTREAM LLC AND MARK HUTCHISON, Appellants

## V.

## AMERICAN MIDSTREAM PARTNERS, LP, AMERICAN MIDSTREAM GP, LLC, HIGH POINT INFRASTRUCTURE PARTNERS, LLC, HPIP GONZALEZ HOLDINGS, LLC AND BRIAN BIERBACH, Appellees

---

**On Appeal from the 165th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-76663**

---

## O P I N I O N

In one issue, appellants ERC Midstream LLC and Mark Hutchison challenge the trial court's order granting the special appearance of appellee Brian Bierbach. Concluding the trial court may exercise personal jurisdiction over ERC Midstream and Hutchison's fraud claim, we reverse and remand as to that claim.

## *Background*

ERC Midstream is a limited liability company in the oil and gas industry, which Hutchison owns and manages. Hutchison worked with Forest Oil Company on behalf of ERC Midstream on the engineering, design, and development of a midstream gathering and treatment system related to Forest's production and development of oil and gas assets in the Eagle Ford formation in Gonzalez County, Texas (the "Project"). ERC Midstream and Forest entered into an agreement whereby ERC Midstream would build the requisite system for the Project and Forest would process all of its Gonzalez County oil and gas production through the system.

Hutchison sought private equity funding for the Project and contacted Bierbach, who was then the president and chief executive officer of American Midstream Partners, L.P., based in Denver, Colorado. Hutchison initially flew to Colorado, and Bierbach subsequently came to Dallas, Texas to meet and discuss financing the Project.[1] Hutchison contends that, during that meeting, Bierbach, on behalf of American Midstream, proposed to form an affiliated company to develop and finance the Project, offered Hutchison employment at American Midstream, and assured Hutchison that American Midstream "had sufficient capital to fund the . . . Project." Hutchison also asserts that at the Dallas meeting, Bierbach offered him 10% equity in the Project and any other projects Hutchison brought to American Midstream. Bierbach denies that he offered Hutchison any such equity. Hutchison accepted American Midstream's employment offer allegedly in reliance on Bierbach's representations and moved to Denver to fulfill the role of vice president of business development.

---

[1] Bierbach was on a business trip and arranged a stopover in Dallas to meet with Hutchison.

After Hutchison began working for American Midstream, he learned that American Midstream lacked sufficient capital to finance the Project. American Midstream brought in a third-party investor, ArcLight Capital Partners, LLC, to fund the Project. ArcLight created HPIP Gonzalez Holdings, LLC, which signed an agreement with Forest to complete the Project. Shortly thereafter, American Midstream terminated Hutchison's employment. Hutchison was not paid any compensation for the Project.

Hutchison and ERC Midstream filed suit against American Midstream, Bierbach, and others, bringing claims for misappropriation of trade secrets, fraud, constructive trust, breach of contract, promissory estoppel, conversion, conspiracy, declaratory judgment, and quantum meruit. Bierbach, in his individual capacity, filed a special appearance, asserting he was not subject to personal jurisdiction in Texas. Hutchison and ERC Midstream attached an affidavit from Hutchison to their response to the special appearance. The trial court sustained Bierbach's objections to and struck large portions of the affidavit, granted the special appearance, and dismissed all claims against Bierbach for lack of personal jurisdiction.

## *Discussion*

In one issue, Hutchison and ERC Midstream challenge the trial court's grant of Bierbach's special appearance. Texas courts may exercise personal jurisdiction over a nonresident if the Texas long-arm statute authorizes the exercise of jurisdiction and the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007).

## I. Sufficient Jurisdictional Facts Alleged

A plaintiff bears the initial burden of alleging facts sufficient to bring a nonresident defendant within the terms of the Texas long-arm statute. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013). The Texas long-arm statute allows the exercise of personal jurisdiction over a nonresident defendant who "commits a tort in whole or in part in this state." Tex. Civ. Prac. & Rem. Code § 17.042(2). We consider both the plaintiff's original pleadings and response to the defendant's special appearance in determining whether the plaintiff satisfied its burden to allege jurisdictional facts. *Alattar v. Kay Holdings, Inc.*, No. 14-14-00792-CV, 2016 WL 145991, at *2 (Tex. App.—Houston [14th Dist.] Jan. 12, 2016, no pet.).

Hutchison and ERC Midstream alleged in their live petition, among other things:

- Plaintiffs were led to believe that [American Midstream] had available liquid capital in excess of $60 million, had ready availability and quick access to the lowest cost of capital from the equity market, and . . .was willing and able to underwrite the costs of the [P]roject in return for a share of an equity stake in the [P]roject. . . .

- [M]any of the details of Hutchison's employment and compensation related to the [P]roject were discussed face to face when Bierbach traveled to Dallas, Texas for a meeting with Hutchison. . . .

- [O]n multiple occasions, [American Midstream], through Bierbach, represented to Plaintiffs that they would be compensated for the ERC/Forest project with a 10% equity stake.

- In reliance upon these representations of [American Midstream] and Bierbach, Hutchison agreed to join [American Midstream] as an employee, and, more importantly, to disclose to [American Midstream] and hand over the complete commercial agreement associated with the details of his design of the [P]roject . . . .

4

As to their fraud claim, Hutchison and ERC Midstream alleged that American Midstream and Bierbach made material representations to Hutchison and ERC Midstream, with the intent that they rely on the misrepresentations, and Hutchison and ERC Midstream relied on the misrepresentations and thus, provided AMP and Bierbach with access to proprietary and confidential information and trade secrets, resulting in damages. In their response to the special appearance, Hutchison and ERC Midstream alleged that Bierbach made specific representations to Hutchison at the meeting in Dallas: that American Midstream "had sufficient capital to fund the . . . Project" and that Hutchison "would receive a 10% equity piece of the . . . Project and any other project he brought to [American Midstream]." Hutchison alleged that he "relied on these representations in joining [American Midstream] and disclosing the . . . Project to [American Midstream]."

We conclude Hutchison and ERC Midstream pleaded jurisdictional facts that Bierbach committed a tortious act—fraud—in Texas. *See Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 659-60 (Tex. 2010) (holding plaintiff was required to allege defendants committed fraudulent acts in Texas to satisfy his initial burden of pleading jurisdictional facts); *see also Hoagland v. Butcher*, 396 S.W.3d 182, 190-91 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (plurality op.) ("*Hoagland I*") (holding plaintiff pleaded sufficient jurisdictional facts that defendants committed tortious acts in Texas of fraud and fraudulent inducement when plaintiff alleged that defendants made representations in Texas with the intention that the plaintiff would rely on them); *Horizon Shipbuilding, Inc. v. Blyn II Holding, LLC*, 324 S.W.3d 840, 847 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding plaintiff's allegation that defendants committed torts in Texas was sufficient to bring defendants under the long-arm statute). Accordingly, they met their burden of alleging facts sufficient to bring Bierbach within the terms of the

Texas long-arm statute.

## II. No Evidentiary Support for Inferred Finding that All Jurisdictional Bases Were Negated

When the initial burden of alleging facts sufficient to bring a nonresident defendant within the terms of the Texas long-arm statute is met, the burden shifts to the nonresident defendant to negate all potential bases for personal jurisdiction the plaintiff pleaded. *Moncrief*, 414 S.W.3d at 149. A nonresident defendant may negate jurisdiction on either a factual or legal basis. *Kelly*, 301 S.W.3d at 659; *Hoagland v. Butcher*, 474 S.W.3d 802, 810 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("*Hoagland II*"). Factually, the defendant may present evidence that it has insufficient contacts with Texas, effectively disproving the plaintiff's allegations; the plaintiff then may respond with his own evidence that affirms his allegations. *Kelly*, 301 S.W.3d at 659; *Hoagland II*, 474 S.W.3d at 810. Legally, the defendant may show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction. *Kelly*, 301 S.W.3d at 659; *Hoagland II*, 474 S.W.3d at 810.

A trial court's assertion of personal jurisdiction over a defendant comports with due process when the nonresident defendant has minimum contacts with the forum state and asserting jurisdiction complies with traditional notions of fair play and substantial justice. *Moncrief*, 414 S.W.3d at 150; *Hoagland II*, 474 S.W.3d at 810-11. A defendant establishes minimum contacts with a forum when he purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Moncrief*, 414 S.W.3d at 150; *Hoagland II*, 474 S.W.3d at 811.

A nonresident's contacts can give rise to general or specific personal jurisdiction. *Moncrief*, 414 S.W.3d at 150; *Hoagland II*, 474 S.W.3d at 811.

Continuous and systematic contacts with a state give rise to general jurisdiction, while specific jurisdiction exists when the cause of action arises from or is related to purposeful activities in the state. *Moncrief*, 414 S.W.3d at 150; *Hoagland II*, 474 S.W.3d at 811. Here, Hutchison and ERC Midstream's asserted basis is specific jurisdiction, which focuses on the relationship between the defendant, Texas, and the litigation to determine whether the claims arise from the Texas contacts. *Moncrief*, 414 S.W.3d at 150; *Hoagland II*, 474 S.W.3d at 811.

When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by evidence. *Moncrief*, 414 S.W.3d at 150; *Hoagland II*, 474 S.W.3d at 811. The ultimate question of whether a court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Moncrief*, 414 S.W.3d at 150; *Hoagland II*, 474 S.W.3d at 811. However, if a factual dispute exists, we are called upon to review the trial court's resolution of the factual dispute as well. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Hoagland II*, 474 S.W.3d at 811.

The trial court's inferred factual findings are not conclusive and may be challenged for legal and factual sufficiency when this court has a complete record on appeal. *Hoagland II*, 474 S.W.3d at 811. When examining a legal sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *Hoagland II*, 474 S.W.3d at 811. We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Keller*, 168 S.W.3d at 827; *Hoagland II*, 474 S.W.3d at 811. The evidence is legally sufficient if it would enable a reasonable and fair-minded person to find the fact under review. *Keller*,

7

168 S.W.3d at 827; *Hoagland II*, 474 S.W.3d at 811. A legal sufficiency challenge will be sustained if the record reveals that evidence offered to prove a vital fact is no more than a scintilla. *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014). The factfinder is the sole judge of witnesses' credibility and the weight to be given their testimony. *Keller*, 168 S.W.3d at 819; *Hoagland II*, 474 S.W.3d at 811. We do not analyze factual sufficiency if we conclude, as here, that the evidence supporting a finding is legally insufficient. *Corpus v. Arriaga*, 294 S.W.3d 629, 634 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

### A. Briefing Waiver as to Certain Claims

Specific jurisdiction requires us to analyze jurisdictional contacts on a claim-by-claim basis. *Moncrief*, 414 S.W.3d at 150; *Hoagland II*, 474 S.W.3d at 812. But we need not do so if all claims arise from the same forum contacts. *Moncrief*, 414 S.W.3d at 150–51; *Hoagland II*, 474 S.W.3d at 812. Hutchison and ERC Midstream allege that their fraud claim arose from Bierbach's purported misrepresentations at the Dallas meeting. Relying on *Hoagland I*, they assert that jurisdiction exists over their fraud claim and that we need not address jurisdiction as to any other claims. 396 S.W.3d at 194 n.14. But *Hoagland I* was decided before *Moncrief*, which established that appellate courts are required to analyze jurisdictional contacts on a claim-by-claim basis when they do not arise from the same forum contacts. 414 S.W.3d at 150. Hutchison and ERC Midstream make no argument respecting the genesis of their other claims. We may not grant relief that an appellant does not request. *Queen v. RBG USA, Inc.*, No. 14-14-00829-CV, 2016 WL 1729030, at *3 n.2 (Tex. App.—Houston [14th Dist.] Apr. 28, 2016, no. pet. h.); *see also In re S.K.H.*, 324 S.W.3d 156, 159 (Tex. App.—El Paso 2010, no pet.). Because no substantive argument supports Hutchison and ERC Midstream's challenge to the trial court's grant of the special appearance as to their claims

against Bierbach other than fraud, we conclude the challenge is inadequately briefed and therefore do not address it. *See Saifi v. City of Texas City*, No. 14-13-00815-CV, 2015 WL 1843540, at *7 (Tex. App.—Houston [14th Dist.] Apr. 23, 2015, no pet.) (mem. op.) (declining to address assertion lacking any substantive argument); *see also* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). We address only whether the trial court had jurisdiction over Hutchison and ERC Midstream's fraud claim.

## B. Failure to Negate Each Allegation of Wrongdoing

Hutchison and ERC Midstream's fraud claim is based on two purported misrepresentations made by Bierbach in Texas—that American Midstream had sufficient capital to fund the Project and that Hutchison would receive 10% equity in the Project and any other projects he brought to American Midstream. Pointing out that Hutchison and ERC Midstream did not challenge the trial court's order sustaining Bierbach's objections to Hutchison's affidavit, Bierbach asserts there is no evidence in the record that any misrepresentations occurred in Texas. Hutchison and ERC Midstream responded with a motion for leave to supplement their appellate brief and a supplemental brief asserting for the first time that the trial court abused its discretion in sustaining Bierbach's objections to the affidavit. Bierbach contends that Hutchison and ERC Midstream may not raise a new issue in a supplemental brief filed after Bierbach filed his response. Without considering the new issue raised in the supplemental brief, we nevertheless conclude that Bierbach failed to carry his burden to present evidence negating all bases for personal jurisdiction alleged by Hutchison and ERC Midstream.[2]

---

[2] We previously have noted in a criminal opinion that although we have discretion to allow briefs to be amended or supplemented "whenever justice requires, on whatever reasonable

Bierbach attached an affidavit to his special appearance motion in which, among other things, he admitted meeting with Hutchison in Dallas but denied that he offered Hutchison any equity in the Project: "At no time did I tell or represent to Mr. Hutchison that he could have equity in the [P]roject." The trial court granted Bierbach's objection to portions of Hutchison's affidavit in which he declared that Bierbach promised Hutchison a stake in the Project. However, Bierbach did not deny the second basis underlying Hutchison and ERC Midstream's fraud claim—that Bierbach represented that American Midstream had sufficient capital to fund the Project.

Hutchison and ERC Midstream argue in their reply brief that whether Bierbach made the alleged representations is not a jurisdictional fact. Presuming without deciding that making representations in Texas is a jurisdictional fact and that Bierbach's denial is sufficient to negate jurisdiction on that factual basis, we nevertheless conclude that Bierbach denied making only one of the alleged representations. Accordingly, Bierbach did not present evidence negating all bases of jurisdiction.

terms the court may prescribe," this court "rarely, if ever," addresses issues raised for the first time in amended or supplemental briefs because allowing new issues to be raised outside the prescribed period for filing briefs would "potentially extend indefinitely the period in which such briefs could continue to be filed." *Bowles v. State*, No. 14-99-01396-CR, 2001 WL 1047026, at *1 n.2 (Tex. App.—Houston [14th Dist.] Sept. 13, 2001, pet. ref'd) (mem. op., not designated for publication) (citing Tex. R. App. P. 38.7). Moreover, we have declined a motion to treat a reply as a supplemental brief when the appellant raised an issue for the first time to address a matter pointed out in an appellee's response brief. *Cont'l Carbon Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 14-11-00162-CV, 2012 WL 1345748, at *3-4 (Tex. App.—Houston [14th Dist.] Apr. 17, 2012, no pet.) (mem. op.); *see also Warwick Oil & Gas, Inc. v. FBS Props., Inc.*, No. 01-14-00290-CV, 2015 WL 3637988, at *9 (Tex. App.—Houston [1st Dist.] June 11, 2015, no pet.) (mem. op.) ("[A]lthough we may permit supplementation when justice requires, the rules of appellate procedure do not allow an appellant to include in a reply brief a new issue in response to some matter pointed out in the appellee[']s brief but not raised by the appellant's original brief."). Because we construe Hutchison and ERC Midstream's "sub-issue" as a new issue or new grounds not addressed in its opening brief, we deny their motion for leave.

## C. Merits Not at Issue in Jurisdictional Analysis

Bierbach argues, however, that American Midstream did have the ability to fund the Project at the time of the meeting and that the alleged misrepresentations are immaterial to the fraud claim because they are contradicted by the employment agreement between Hutchison and American Midstream.[3] Bierbach is essentially requesting that we determine as a matter of law whether his representation to Hutchison was true. Similarly, Bierbach tries to extricate fraud from the analysis by arguing that the alleged fraudulent conduct was mooted by the later executed employment agreement. These issues go to the merits of Hutchison and ERC Midstream's fraud claim and are therefore inappropriate for us to consider in the special appearance context. *See Dresser-Rand Group, Inc. v. Centauro Capital, S.L.U.*, 448 S.W.3d 577, 584 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("Ultimate liability in tort is not a jurisdictional fact, and the merits of the [plaintiffs'] claims are not at issue in determining whether the trial court erred in dismissing these claims for lack of personal jurisdiction."); *see also Man Indus. (India) Ltd. v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, 309 S.W.3d 589, 593 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding argument that fraud claim was moot and alleged fraudulent conduct "is not sufficiently egregious to meet the requirements for a fraud claim" went to merits of fraud claim).

## D. No Evidence Representations Were Not Directed at Hutchison and ERC Midstream

Bierbach further argues there is no evidence that Bierbach made any representations to ERC Midstream, so the trial court lacked jurisdiction over ERC

---

[3] *See DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("[R]eliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law.").

Midstream's fraud claim against Bierbach. Hutchison alleged that he formed ERC Midstream and ERC Midstream, through Hutchison, developed the plans for the Project. Based on this allegation, the discussions between Bierbach and Hutchison involving acquisition of the Project necessarily involved ERC Midstream. Bierbach thus had the burden to present evidence that his representations were not directed toward ERC Midstream, the company that had developed plans for the Project. Bierbach argues that he presented evidence that Hutchison never told him the Project "belonged to ERC [Midstream] or that ERC [Midstream] would maintain a relationship to the [P]roject." Setting aside the fact that this evidence was not attached to the special appearance and Bierbach has not established that we can consider it, it is not evidence that Bierbach's representations were not directed to Hutchison and ERC Midstream. Accordingly, Bierbach did not present evidence to negate Hutchison and ERC Midstream's allegation that the representations were directed at both of them.

## III. Minimum Contacts Established

We accordingly address whether Bierbach's alleged representation regarding the ability of American Midstream to fund the Project gave rise to personal jurisdiction over Hutchison and ERC Midstream's fraud claim. We consider three factors to determine whether a nonresident purposely availed himself of the privilege of conducting activities in Texas: (1) the defendant's contacts with the forum, not the unilateral activity of another party; (2) whether the contacts were purposeful rather than random, isolated or fortuitous; and (3) whether the defendant has sought some benefit, advantage, or profit by availing himself of the jurisdiction. *Moncrief*, 414 S.W.3d at 151; *Hoagland II*, 474 S.W.3d at 811. We analyze the quality and nature of the contacts, not the quantity. *Moncrief*, 414 S.W.3d at 151; *Hoagland II*, 474 S.W.3d at 811. Accordingly, a single contact may

12

be sufficient to establish specific jurisdiction. *Moncrief*, 414 S.W.3d at 151; *Hoagland II*, 474 S.W.3d at 811. At its core, the purposeful availment analysis seeks to determine whether a nonresident's conduct and connection to a forum are such that he could reasonably anticipate being haled into court there. *Moncrief*, 414 S.W.3d at 152; *Hoagland II*, 474 S.W.3d at 811-12.

### A. Texas Meeting a Purposeful Contact with Texas by Bierbach, Not Unilateral Activity of Third Parties

A nonresident defendant's contacts with the forum are not unilateral or random and fortuitous when the defendant has created continuing obligations between himself and residents of the forum because the defendant has availed himself of the privilege of conducting business there and thus is entitled to the benefits and protections of the forum's laws. *Moncrief*, 414 S.W.3d at 151 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Here, Bierbach's contact with Texas in the form of a meeting to solicit business from Hutchison was neither a unilateral activity of Hutchison nor random and fortuitous. *See id.* at 153; *Hoagland II*, 474 S.W.3d at 812. Bierbach agreed to meet Hutchison in Texas to solicit business. *See Hoagland II*, 474 S.W.3d at 812. Hutchison and ERC Midstream allege that Bierbach made a representation during that meeting regarding American Midstream's ability to fund the Project and Hutchison relied on that representation and provided American Midstream with confidential information so that American Midstream could acquire the Project. As discussed, Bierbach did not negate that allegation. *See Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 886–87 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (holding face-to-face meeting in Texas during which defendant made representations to plaintiff was purposeful contact that formed "a substantial portion of the core of the litigation"); *see also Hoagland II*, 474 S.W.3d at 812-13 (same). Moreover, Bierbach's contact was purposeful and substantial because his activity was aimed

13

at gaining access to a multimillion dollar Project through a company in Texas and a Texas resident. *See Moncrief*, 414 S.W.3d at 153; *Hoagland II*, 474 S.W.3d at 813.

Bierbach argues that the trial court lacked jurisdiction because his trip to Dallas had an "insubstantial relation to the underlying claims," citing *Bower v. Am. Lumber, Inc.*, No. 10-14-00322-CV, 2015 WL 1755311, at *2 (Tex. App.—Waco Apr. 16, 2015, no pet.) (mem. op.) and *Dresser-Rand Group*, 448 S.W.3d at 588. Neither of those cases involve allegations that the defendant made misrepresentations in Texas that gave rise to a fraud claim, in other words, that the defendant committed a tort in Texas. *See Bower*, 2015 WL 1755311, at *2-3 (noting meeting in Texas was a "get to know you" occasion that did not involve tortious activity); *Dresser-Rand Group*, 448 S.W.3d at 587-88 (involving contract negotiations conducted in Texas in part and meetings held in Texas with no discussion of misrepresentations allegedly made in Texas). Thus, they are distinguishable from these facts.

Bierbach further asserts that a single contact with Texas cannot give rise to specific jurisdiction. That is not the law. The Texas Supreme Court has noted that a single contact may be sufficient to establish specific jurisdiction. *Moncrief*, 414 S.W.3d at 151; *see also Hoagland II*, 474 S.W.3d at 811.[4] We previously have held that a single meeting in Texas was sufficient to establish the defendant purposely availed itself of the privilege of conducting business in Texas when the defendant "voluntarily came to Texas" where he "purposefully conducted business with a Texas resident" and "made representations that form a substantial portion of the

---

[4] Bierbach attempts to distinguish *Hoagland II* because it involved three trips to Texas and an agreement that contemplated an ongoing business relationship with a Texas resident. 474 S.W.3d at 807-08. But, as we noted in that case, jurisdiction may be established by a single contact. *Id.* at 811.

14

core of the litigation." *Max Protetch*, 340 S.W.3d at 887. Here, similarly, Bierbach voluntarily came to Texas, purposely met with Hutchison in an attempt to acquire business, and purportedly made a representation that forms the basis of Hutchison and ERC Midstream's fraud claim.[5]

### B. Substantial Connection between Texas Meeting and Facts Relating to Fraud Claim

For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there also must be a substantial connection between those contacts and the operative facts of the litigation. *Moncrief*, 414 S.W.3d at 156; *Hoagland II*, 474 S.W.3d at 814. Bierbach argues that the meeting in Texas does not relate to Hutchison and ERC Midstream's fraud claim. We disagree.

Hutchison and ERC Midstream claim they were induced to join American Midstream and disclose confidential aspects of the Project by Bierbach's representation about the ability of American Midstream to fund the Project.[6] Hutchison and ERC Midstream's fraud claim thus is based in large part on Bierbach's purported representation at that meeting, which forms the basis of the operative facts for that claim. *See Hoagland II*, 474 S.W.3d at 814; *see also Max Protetch*, 340 S.W.3d at 888.

We conclude there is a substantial connection between Bierbach's contact with Texas and the operative facts of the fraud claim and thus the pleadings and evidence do not support the trial court's implied findings in support of its

---

[5] Bierbach implies that because Hutchison initiated contact with American Midstream, the meeting in Dallas was not sufficient to establish Bierbach personally availed himself of the privilege of conducting business in Texas. Whether Hutchison initially contacted American Midstream is not pertinent to our analysis because Bierbach allegedly committed a tort while in Texas. *See Max Protetch*, 340 S.W.3d at 882 (noting plaintiff initially contacted defendant before defendant later met plaintiff in Texas).

[6] As discussed in this opinion, we consider only the purported misrepresentation about American Midstream's ability to fund the Project.

15

conclusion that it lacked jurisdiction over Hutchison and ERC Midstream's fraud claim.[7] *See Moncrief*, 414 S.W.3d at 150; *Max Protetch*, 340 S.W.3d at 888; *Hoagland II*, 474 S.W.3d at 815.

### C. Exercise of Jurisdiction Consistent with Traditional Notions of Fair Play and Substantial Justice

We next must determine whether exercise of personal jurisdiction over the nonresident offends traditional notions of fair play and substantial justice. *See Moncrief*, 414 S.W.3d at 154; *Hoagland II*, 474 S.W.3d at 815. In making this determination, we consider (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interests of the several states in furthering fundamental substantive social policies. *Moncrief*, 414 S.W.3d at 155. When the nonresident defendant has purposefully established minimum contacts with the forum state, only in rare instances will the exercise of jurisdiction not comport with fair play and substantial justice. *Id*. at 154–55. The defendant bears the burden of presenting a compelling case that the presence of some consideration would render jurisdiction unreasonable. *Dodd v. Savino*, 426 S.W.3d 275, 287 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Bierbach does not present a compelling case that the trial court's exercise of jurisdiction in this case would be unreasonable. He argues that he and Hutchison do not live in Texas, and it would be a burden on him to travel to Texas to litigate the case. He has not established, however, how the exercise of jurisdiction in Texas would impose an *unreasonable* burden on him, whereas Texas has an obvious

---

[7] We conclude that the meeting in Texas established personal jurisdiction over Bierbach as to the fraud claim. Thus, we need not address whether any other purported contacts with Texas gave rise to personal jurisdiction. *See Hoagland II*, 474 S.W.3d at 815 n.12.

interest in providing a forum for resolving disputes in which the defendant allegedly committed a tort in whole or in part in Texas; one of the plaintiffs, ERC Midstream, is a Texas company; and the Project involves an oil and gas treatment system in Texas. *See Hoagland II*, 474 S.W.3d at 816. Additionally, because the trial court already is familiar with this case and the claims against the other defendants are being tried in Texas, it promotes judicial economy to litigate the fraud claim against Bierbach in Texas. *See Moncrief*, 414 S.W.3d at 156; *see also Hoagland II*, 474 S.W.3d at 815. Finally, although Colorado has an interest in resolving claims among its residents, Texas also has a significant interest in resolving claims for torts committed in Texas against a Texas entity. *See Moncrief*, 414 S.W.3d at 156; *see also Hoagland II*, 474 S.W.3d at 815. We conclude haling Bierbach into court in Texas does not offend traditional notions of fair play and substantial justice under these circumstances.

### *Conclusion*

On balance, we conclude that the exercise of jurisdiction comports with the constitutional requirements of due process. Accordingly, the trial court erred in granting Bierbach's special appearance and dismissing the case. We reverse the trial court's order as to Hutchison and ERC Midstream's fraud claim and remand for proceedings consistent with this opinion.


/s/    Martha Hill Jamison
       Justice


Panel consists of Justices Jamison, Donovan, and Brown.

17