2026 Tex. Bus. 16



THE BUSINESS COURT OF TEXAS
EIGHTH DIVISION

| | | |
|---|---|---|
| DAIMLER TRUCK FINANCIAL SERVICES USA LLC, | § § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Cause No. 25-BC08A-0011 |
| VANGUARD NATIONAL TRAILER CORPORATION, CIMC REEFER TRAILER, INC., a/k/a VANGUARD REEFER TRAILER, INC., CROWNFOUR LLC, d/b/a KING COUNTRY TRAILER AND REPAIR, and DOES 1-100, | § § § § § § § § § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

¶ 1    Pending before the Court is Defendant Vanguard National Trailer Corporation and CIMC Reefer Trailer, Inc. ("CIMC") (together with Vanguard National Trailer Corporation, the "Vanguard Companies")'s Amended Special Appearance, and Subject Thereto Motion to Dismiss for Lack of Personal Jurisdiction ("Amended Special

Appearance"), filed November 3, 2025.[1] Plaintiff Daimler Truck Financial Services USA LLC ("Daimler") filed its Response in Opposition to the Vanguard Companies' Amended Special Appearance and Motion to Dismiss for Lack of Personal Jurisdiction on February 4, 2026. The Vanguard Companies filed their Reply on February 11, 2026. The Court held a hearing on the Vanguard Companies' Amended Special Appearance on February 18, 2026. Having considered the pleadings, the oral and written arguments, and the relevant, applicable law, the Court finds it lacks personal jurisdiction over the Vanguard Companies. Accordingly, the Amended Special Appearance must be **GRANTED,** and the claims against the Vanguard Companies must be **DISMISSED** for lack of personal jurisdiction.

## I.  BACKGROUND[2]

¶ 2    At its core, this matter is a lien-priority dispute between several parties involved in the trailer financing/lending industry: Texas-based Daimler, Indiana-based Vanguard Companies, California-based nondefendants KAL Trailers and Leasing ("KAL Trailers") and KAL Freight LLC ("KAL Freight"), and Texas-based Defendant Crownfour LLC, d/b/a King Country Trailer and Repair ("King Country").

---

[1] On November 19, 2025, Daimler filed its Motion to Compel Jurisdictional Discovery, seeking, *inter alia*, an Order compelling the Vanguard Companies' response to certain jurisdiction-related requests for production and depositions. The Vanguard Companies filed their Response to Daimler's Motion to Compel Discovery on November 24, 2025, and Daimler filed its Reply on November 26, 2025. The Court issued its Order on Plaintiff's Motion to Compel Jurisdictional Discovery on December 10, 2026, limiting the scope of Daimler's jurisdiction-related discovery requests and ordering the Vanguard Companies to produce certain deponents and documents.

[2] The foregoing factual basis is taken from Daimler's First Amended Petition. The allegations are taken as true and viewed in the light most favorable to Daimler. *See Tex. Dept. of Transp. v. Ramirez,* 74 S.W.3d 864, 867 (Tex. 2002) (when considering jurisdictional motions, the reviewing court construes pleadings in the plaintiff's favor).

¶ 3    The    Court    summarizes    the    typical    vehicle    and    trailer distribution/sale/financing trajectory as follows:

> The process begins with the vehicle's manufacturer. The manufacturer sells the vehicle to the dealer; the dealer works with a floor plan lender. The floor plan lender (1) gives the dealer money to pay back the manufacturer and (2) gives the dealer a line of credit to finance the vehicle's purchase. The floor plan lender requires an unexecuted and undated Manufacturer's Certificate of Origin ("MCO"), which proves the vehicle exists.

> As stated, the dealer uses money from the floor plan lender to pay the vehicle's manufacturer. After payment, the manufacturer sends an executed and dated original MCO to the dealer. The original MCO certifies the vehicle is transferred to the dealer and is the dealer's property. The dealer then sells the vehicle to a customer.

> Customers use their own lender to purchase the vehicle from the dealer. The customer's lender requires from the dealer a copy of the executed and dated MCO, proving the dealer has the vehicle's original MCO, owns the vehicle, and can sell the vehicle. The customer's lender never receives the original MCO, only the copied MCO.

> After the customer's lender receives the copied MCO, it pays the dealer. The dealer then sends the original MCO to the customer's state. The customer then receives the vehicle's title with the lender's lien noted and perfected.

*See* Daimler's First Amended Petition ("First Am. Pet.") at 2, 10-11.

¶ 4    The Vanguard Companies are trailer manufacturers. First Am. Pet. at 9. KAL Trailers is a California-based dealer and KAL Freight is its California-based trucking and logistics counterpart. *Id.*; *see* Daimler's Response in Opposition to the Vanguard Companies' Amended Special Appearance and Motion to Dismiss for Lack of Personal Jurisdiction ("Resp."), Ex. 13, 122 (listing Fontana, California as KAL Trailers and KAL Freight's principal place of business). Between 2022 and 2023, Daimler loaned KAL

Freight millions of dollars to enable KAL Freight to purchase Vanguard-manufactured trailers from KAL Trailers ("Disputed Trailers"). First Am. Pet. at 3; February 18, 2026, Special Appearance Hearing Transcript ("Tr.") at 51. But Daimler was unaware (1) the Vanguard Companies sold the Disputed Trailers to KAL Trailers on credit, and (2) the Vanguard Companies provided dated, endorsed and signed MCO copies to KAL Trailers with certifications that the Vanguard Companies had transferred the Disputed Trailers to KAL Trailers. First Am. Pet. at 12. The Vanguard Companies delivered hundreds of trailers to KAL Trailers over the two-year period. *Id.* at 15. During this time, Daimler "relied on these fraudulent MCOs to loan KAL Freight tens of millions of dollars to purchase the [Disputed Trailers] from KAL Trailers." *Id.* at 13.

¶ 5    In December 2024, KAL Trailers and KAL Freight filed for bankruptcy in Texas. First Am. Pet. at 10. The bankruptcy court entered orders terminating the statutory automatic stay, allowing "Daimler to take possession of all of its collateral . . . including collateral in the possession of the third parties (including the Vanguard Companies)."[3] *Id.* at 15 (footnote added). While Daimler claims its loans were secured by the State of California, the Vanguard Companies filed with the Uniform Commercial Code and exercised their statutory right to repossess some of the Disputed Trailers. *Id.* at 3, 15. The Vanguard Companies sold a portion of the remaining Disputed Trailers to King Country ("King Country Disputed Trailers"). *Id.* at 10, 16. King Country has since "attempted to sell [the

---

[3] Notably, the Vanguard Companies filed their First Amended Adversary Complaint in KAL Trailers and KAL Freight's bankruptcy case. Resp., Ex. 13, 116-151. The Vanguard Companies sought damages in connection with KAL Trailers and KAL Freight's allegedly fraudulent financing/lending scheme. *Id.* at 118-121, 151.

King Country Disputed Trailers] to its customers, most of whom are located in Texas." *Id.* at 16. Daimler claims the King Country Disputed Trailers "are titled in the name of KAL Freight, with Daimler's liens properly perfected on the certificates of titles." *Id.*

¶ 6    Daimler now seeks to repossess the Disputed Trailers and the King Country Disputed Trailers, and to recover money lost from the KAL Freight loans. *Id.* at 19. It has sued the Vanguard Companies and King Country for (1) common law fraud, (2) negligent misrepresentation, (3) conspiracy, (4) money had and received, and (5) conversion. First Am. Pet. at 16-21. Daimler also seeks a declaratory judgment against the Vanguard Companies, essentially asking the Court to determine Daimler has a first-priority lien and a perfected security interest in both the Disputed Trailers and the King Country Disputed Trailers. *See id.* at 18-19.

¶ 7    The Vanguard Companies filed their Amended Special Appearance asserting they are not subject to general or specific jurisdiction in Texas. Vanguard Companies' Amended Special Appearance ("Am. Spec. Ap.") at 7-13. Specifically, the Vanguard Companies claim the Court lacks general jurisdiction because they are Delaware corporations with principal places of business in Indiana. *Id.* at 1. They are adamant the claims against them do not arise from or relate to any of their connections with Texas and accordingly forgo addressing their alleged purposeful availment with Texas. *Id.* at 9 n.1 ("Because Daimler has failed to establish its claims arise out of or relate to the Vanguard Companies' contacts with Texas, purposeful availment is not addressed in this Motion. The Vanguard Companies, however, do not concede purposeful availment is satisfied in this case and reserve all rights to later challenge purposeful availment as necessary.").

¶ 8     In its briefings, Daimler does not contest the Court lacks general jurisdiction over the Vanguard Companies.  Nor does it address the Vanguard Companies' purposeful availment with Texas.  Resp. at 3.  Daimler does, however, maintain its causes of actions directly correlate with the Vanguard Companies' "Texas Conduct or Business Model."  *Id.* (internal quotations omitted).  Said differently, Daimler maintains the Court has personal jurisdiction over the Vanguard Companies' because "certain Daimler claims arise out of the Vanguard Companies [sic] conduct in Texas."  First. Am. Pet. at 8 (emphasis omitted).

## II.     APPLICABLE LAW

¶ 9     In a special appearance, both plaintiff and defendant bear shifting burdens of proof.  Plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within reach of Texas' long-arm statute.  *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010).  Texas courts look at both plaintiff's petition and special appearance in determining whether plaintiff satisfied its burden.  *See* Tex. R. Civ. P. 120(a)(3).  If plaintiff so satisfies, the burden shifts to defendant to present sufficient evidence to defeat plaintiff's allegations and negate all bases of personal jurisdiction.  *Id.*

¶ 10     The nonresident defendant's forum-state contacts can give rise to two types of personal jurisdiction: general jurisdiction and specific jurisdiction.  *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007).  Courts may exercise specific jurisdiction over a nonresident defendant, when (1) the defendant engages in some act by which it purposefully avails itself of the privilege of conducting activities within the state and (2) the plaintiff's claims arise out of or relate to those forum contacts. *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 347 (Tex. 2023).  Purposeful

availment and relatedness are "two co-equal components." *Id.* (quoting *Moki Mac*, 221 S.W.3d at 579). Specific jurisdiction requires a "claim-by-claim analysis that focuses on the relationship between the defendant, the forum state, and the operative facts of the litigation." *State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 413 (Tex. 2023) (internal quotations omitted).

¶ 11  Even if the defendant has minimum contacts with Texas, personal jurisdiction must comply with traditional notions of fair play and substantial justice. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 18 (Tex. 2021). The court will consider five factors when evaluating defendant's contacts with the forum:

(1) the burden on the defendant;
(2) the interests of Texas in adjudicating the dispute;
(3) the plaintiff's interest in obtaining convenient and effective relief;
(4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and
(5) the shared interest of several states in furthering fundamental substantive social policies.

*Luciano*, 625 S.W.3d at 18-19. When the defendant has minimum contacts with the forum-state, only in "rare cases" will the exercise of jurisdiction not comport with traditional notions of fair play and substantial justice. *Id*. at 18 (quotation omitted).

## III.  DISCUSSION

¶ 12  As stated above, the Court's lack of general jurisdiction over the Vanguard Companies is undisputed. Nor do the parties challenge the Vanguard Companies' purposeful availment, the first specific jurisdiction prong. Therefore, the only inquiries in determining whether the Vanguard Companies have sufficient minimum contacts to trigger personal jurisdiction is whether Daimler's claims arise out of or relate to the Vanguard

Companies' Texas contacts. As further discussed below, the Court finds Daimler has not sustained its burden to satisfy the specific jurisdiction's relatedness-prong.

### A. Relatedness

#### 1. *Claims Arising out of Texas Conduct*

¶ 13   Daimler has not established its claims against the Vanguard Companies arise out of their conduct in Texas. Daimler makes the blanket assertion: "[i]n addition to all of its claims relating to [the] Vanguard [Companies'] contacts with Texas, Daimler's conversion, money had and received, and declaratory judgment causes of action also arise from Vanguard Companies' contacts with Texas." First Am. Pet. at 6 (internal quotations omitted). It argues these three claims arise out of CIMC's sale of the King Country Disputed Trailers to Texas-based King Country. *Id.* at 8. Daimler likens the underlying operative facts to a defendant systematically serving the forum market with an injurious product. Resp. at 15 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 366-70 (2021)). The Vanguard Companies disagree, arguing Daimler lacks the requisite "showing of causation" to satisfy the prong: "[e]xcept for three of its causes of action[,] Daimler concedes in its response that the Vanguard [C]ompanies['] alleged Texas conducts are not a but-for cause [of] Daimler's claims." Tr. at 25. Per the Vanguard Parties, the basis of their alleged conduct occurred in California, and their Texas activities do not give rise to any claims. *Id.* at 29.

¶ 14   The "arising out of" prong requires a causation examination. *Ford Motor Co.*, 592 U.S. at 361-2. For purposes of determining specific jurisdiction, it is too stringent to require *proof* of causation. *Id.* at 362. Said differently, there need not be proof plaintiff's

claim came about because of the defendant's in-state conduct. *Id.* Rather, the court must examine the affiliation between the forum and the underlying dispute. *Id.* (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017). When a defendant has continuously and deliberately exploited the forum's market, it must reasonably anticipate being hauled into that forum's courts to defend actions based on products that caused injury there. *Ford Motor Co.*, 592 U.S. at 364 (quoting *Keeton v. Hustler Mag.*, Inc., 465 U.S. 770, 781 (1984)).

¶ 15    Over a two-year period, Daimler loaned a California-based entity (KAL Freight) over $28,000,000 to purchase trailers from another California-based entity (KAL Trailers). First Am. Pet. at 3, 22. The Indiana-based Vanguard Companies provided MCO copies to KAL Trailers in California and KAL Trailers then provided the MCO Copies to KAL Freight in California. *Id.* at 12. Relying on the MCO copies' validity, Daimler loaned millions to KAL Freight to purchase the Disputed Trailers. *Id.* at 13. California issued certificates of title for the Disputed Trailers in the name of KAL Freight with Daimler's lien noted. *Id.* at 16.

¶ 16    The Vanguard Companies' suit-related conduct with Texas—selling the Disputed Trailers to King Country—is too attenuated to establish the Court's jurisdiction with respect to Daimler's claims. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("[T]he defendant's suit-related conduct must create a substantial connection with the forum State."). Indeed, the operative facts and the Vanguard Companies' dealings are almost exclusively in California. *See, infra.* As pertains to Texas, the Vanguard Companies' role in this dispute is limited to selling Disputed Trailers to Texas-based King Country, one of

their many national resellers. And while Daimler claims the Vanguard Companies' alleged tortious acts in California mirror it's Texas "business model" and are systematic, the Court sees otherwise. The pleaded facts support the Vanguard Companies' contention that they do not continuously and deliberately exploit Texas' trailer market. *Keeton*, 465 U.S. at 771. Their California conduct is apparently distinct from their King Country trailer sales. Moreover, their interactions with Daimler, an alleged lienholder on the Disputed Trailers, are simply too "random, fortuitous, or attenuated" to confer personal jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

¶ 17    The Vanguard Companies' Texas conduct may, in fact, be intertwined with their transactions or interactions with Daimler or King Country. But "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (the parties' relationship with each other is significant in evaluating their ties to the forum). Certainly, the Vanguard Companies' relationship with Daimler is insufficient to put the Vanguard Companies on notice that Daimler may haul them into a Texas court based on sales to a third-party distributor. Daimler has not sustained its burden in pleading its claims against the Vanguard Companies arise out of their Texas contacts.

### 2. *Claims Related to Texas Contacts*

¶ 18    As alleged, the operative facts surrounding the Vanguard Companies' "fraudulent scheme" are derivative of the parties' dealings in California, not Texas. First Am. Pet. at 2 (emphasis omitted). Daimler avers, "[t]he Vanguard Companies are national trailer companies that manufacture, sell, warrant and service their trailers to purchasers

located in Texas and throughout the United States, using the same business model in all states." First Am. Pet. at 6. In response, the Vanguard Companies claim these connections are merely generalized dealings with Texas:

> [T]he fact that resellers located in Texas purchase trailers from Vanguard and VRTI, as well as from other manufacturers in other jurisdictions, is not evidence of the Vanguard Companies operating in Texas . . . [C]ustomers (including any resellers) are responsible for picking up the trailers they purchased from Vanguard's or VRTI's facilities [] outside of Texas . . . Neither Vanguard nor VRTI has control over where a customer takes a trailer or what the customer does with a trailer once [it] takes possession of a trailer.

Resp. at 5.

¶ 19 To establish relatedness, there must be an appropriate "nexus between the nonresident defendant, the litigation, and the forum." *Moki Mac*, 221 S.W.3d at 579. The plaintiff "must demonstrate a substantial connection between the defendant's contacts and the operative facts of the litigation." *LG Chem Am.*, 670 S.W.3d at 347 (quoting *Moki Mac*, 221 S.W.3d at 585) (internal quotations omitted). Operative facts are the facts that "will be the focus of the trial, will consume most if not all of the litigation's attention, and the overwhelming majority of the evidence will be directed to that question." *Moki Mac*, 221 S.W.3d at 585. But it is not necessary that plaintiff's claim came about because of the defendant's in-state conduct. *Volkswagen Aktiengesellschaft*, 669 S.W.3d at 430-31 (quoting *Ford Motor Co.*, 592 U.S. at 362). Rather, "[r]elationships may support jurisdiction without a causal showing even when the litigation merely relates to the defendant's forum contacts." *Id.* at 431 (quoting *Ford Motor Co.*, 592 U.S. at 362) (internal quotations omitted); *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 16 (Tex.

2021) (due process does not mandate a causation-only approach to specific jurisdiction). Although a court typically evaluates relatedness on a claim-by-claim basis, it need not do so if all claims arise from the same forum contacts. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016); *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150-1 (Tex. 2013).

¶ 20    As pleaded, Daimler's suit does not sufficiently relate to the Vanguard Companies' contacts with Texas. *Luciano*, 625 S.W.3d at 14. Texas is noticeably absent from the majority of the operative facts. The core of Daimler's claims—that Daimler would not have loaned KAL Freight millions absent the Vanguard Companies' deceptive MCOs and representations—occurred in California. Even taking as true Daimler's allegation that the Vanguard Companies knew their executed and dated MCO copies would fraudulently induce lenders like Daimler into thinking they had the legal right to sell and transfer trailers, the Texas nexus is lacking. The focus at trial likely to "consume most if not all of the litigation's attention" is Daimler's transaction with KAL Freight, Daimler's liens on the Disputed Trailers, and how the Vanguard Companies acquired the Disputed Trailers. *Moki Mac*, 221 S.W.3d at 585. The heart of what Daimler believes are injurious events occurred outside of Texas and are not related to the Vanguard Companies' Texas contacts. *Perkins v. Benguet Consol. Min. Co.*, 343 U.S. 437, 438 (1952) (affirming lower court's specific jurisdiction analysis because "[t]he cause of action sued upon did not arise in Ohio and does not relate to the corporation's activities there."). Daimler has not sustained its burden as to the relatedness prong—its claims neither derive from, nor are they sufficiently connected with, the very controversy that establishes jurisdiction. *Bristol-Meyers*, 582 U.S. at 262.

**B. Traditional Notions of Fair Play and Substantial Justice**

¶ 21   Daimler has not established the Vanguard Companies' requisite minimum contacts with Texas.   Accordingly, the Court need not address whether exercise of jurisdiction would comport with fair play and substantial justice.  *See RC Midstream LLC v. Am. Midstream Partners, LP*, 497 S.W.3d 99, 112 (Tex. App. 2016) (after establishing minimum contacts, "the defendant bears the burden of presenting a compelling case that the presence of some consideration would render jurisdiction unreasonable.").

## IV.   CONCLUSION

¶ 22   Daimler has not met its burden in pleading its claims against the Vanguard Companies arise out of or are related to their Texas contacts.  Absent general or specific jurisdiction, the Court lacks personal jurisdiction over the Vanguard Companies. Therefore, the Vanguard Companies' Amended Special Appearance must be **GRANTED**.

¶ 23   It is therefore **ORDERED** that the Vanguard Companies' Amended Special Appearance is **GRANTED**.

¶ 24   It is further **ORDERED** that all claims against the Vanguard Companies are **DISMSSED** for lack of personal jurisdiction.

_____
Judge, Texas Business Court,
Eighth Division

SIGNED: April 8, 2026.