# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00069-CV

**Leesboro Corporation, Appellant**

**v.**

**Claude Hendrickson, Appellee**

### FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT
### NO. 32594, HONORABLE ED MAGRE, JUDGE PRESIDING

## O P I N I O N

In this interlocutory appeal, appellant Leesboro Corporation challenges the trial court's grant of appellee Claude Hendrickson's special appearance. Leesboro sued Dixie Demolition, Hendrickson, who is the owner and manager of Dixie Demolition, and several other defendants on various claims related to a salvage operation at a power plant in Rockdale, Texas. Leesboro brought tort claims against Hendrickson based on an alleged fraudulent misrepresentation Hendrickson made while in Texas. Hendrickson filed a special appearance, asserting that he was not amenable to personal jurisdiction because he was a resident of Alabama and did not have sufficient minimum contacts with Texas. The trial court granted his special appearance and dismissed all claims against him for lack of personal jurisdiction. We will affirm the trial court's order.

**BACKGROUND**

Hendrickson owns and operates Dixie Demolition, LLC ("Dixie"), a power plant demolition company that operates out of Birmingham, Alabama. In September 2007, Dixie's parent company, Dixie Equipment, entered into a contract with Alcoa, Inc., to purchase and demolish certain power plants at Alcoa's aluminum plant in Rockdale, Texas. Dixie Equipment assigned its rights in the Alcoa contract to Dixie, which later entered into a contract to sell most of the salvage from the plant to Airways Recycling Group. Airways then entered into a contract with JNS Enterprises to sell it some of the salvage from the Alcoa plant. Finally, Leesboro, a Texas corporation, entered into a contract with JNS to purchase salvage materials from the Alcoa plant.

Leesboro, however, was never able to purchase any of the salvage from the Rockdale plant because, according to Dixie, Airways defaulted on its contract with Dixie, and Dixie made other arrangements to sell the salvage materials. As a result, the subsequent contracts flowing down from the defaulted contract, including Leesboro's, were never completed. Based on the failure to perform these contracts, Leesboro sued Dixie, Airways, and JNS for breach of contract. Leesboro also sued Dixie, Hendrickson, and Airways for fraud in the inducement, fraudulent concealment, interference with contractual relations, conversion, and violations of the Texas Theft Liability Act.

Leesboro's fraud claims against Hendrickson were based on its allegation that Hendrickson had represented that he had signed, on behalf of Dixie, an agreement guaranteeing that Leesboro would receive its salvage materials from the Rockdale plant regardless of the status of the intervening contracts ("performance guarantee"). Specifically, Leesboro alleged that Hendrickson, in order to induce Leesboro to enter into an agreement with JNS to purchase salvage rights and

2

deposit money under that purchase agreement, told Leesboro's representative that he—i.e., Hendrickson—had signed the performance guarantee and that Leesboro would start receiving its contracted salvage shipments once Leesboro paid the required deposit.

In response to Leesboro's claims against him, Hendrickson filed a special appearance asserting that he was not subject to the personal jurisdiction of Texas courts because he was a resident of Alabama and did not have sufficient minimum contacts with Texas to establish specific jurisdiction over him. Hendrickson also filed an affidavit and corroborating deposition testimony to support his assertion that he neither signed the performance guarantee nor represented that he had signed the performance guarantee. Leesboro responded by offering the deposition testimony of its representative stating that Hendrickson had made the representation. Leesboro also objected to the admission of Hendrickson's affidavit on the grounds that it contained inadmissible evidence. After a hearing, the trial court granted the special appearance and dismissed Leesboro's claims against Hendrickson for lack of jurisdiction. Leesboro appeals.

## DISCUSSION

### *Personal Jurisdiction*

Leesboro's first four issues on appeal challenge the trial court's decision to grant Hendrickson's special appearance and its finding that it did not have personal jurisdiction over Hendrickson. Specifically, Leesboro argues that (1) the trial court erred as a matter of law in granting Hendrickson's special appearance, (2) the evidence established as a matter of law that the trial court had specific jurisdiction over Hendrickson, (3) the trial court erred in impliedly finding and concluding that Hendrickson negated the existence of personal jurisdiction, and (4) the evidence

3

was legally and factually insufficient to support the trial court's implied finding that Hendrickson negated the existence of personal jurisdiction. Because these issues are closely related, we will address them together.

*(i) Standard of Review*

Whether a trial court has personal jurisdiction over a defendant is a question of law that we review de novo. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). The plaintiff bears the initial burden of pleading sufficient allegations to invoke jurisdiction under the Texas long-arm statute. *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002). Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance then assumes the burden of negating all bases of personal jurisdiction alleged by the plaintiff. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002). "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). However, the plaintiff's pleadings are not dispositive of the jurisdictional dispute, thus, both parties can present evidence either proving or disproving the allegations. *Id.* at 658-59. The defendant can also negate jurisdiction on a legal basis. *Id.* at 659.

In making its jurisdictional determination, the trial court must, if necessary, resolve questions of jurisdictional fact. *BMC Software*, 83 S.W.3d at 794. When the trial court does not issue findings of fact and conclusions of law with its special-appearance ruling, as in this case, we infer all fact findings necessary to support the trial court's jurisdictional determination and any legal

4

theory that is supported by the evidence. *GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 870 (Tex. App.—Austin 2008, no pet.) (citing *BMC Software*, 83 S.W.3d at 795). Further, when the appellate record includes the reporter's and clerk's records, as it does in this case, any implied findings are not conclusive and may be challenged for legal and factual sufficiency. *BMC Software*, 83 S.W.3d at 795. Evidence is legally sufficient if there is more than a mere scintilla of evidence to support the finding. *Merrill Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, "rises to the level that would enable reasonable and fair-minded people to differ in their conclusions." *Burroughs Wellcome v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995) (quoting *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994)). Evidence is factually insufficient only if, in light of the entire record, a finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). The trial court is the sole judge of witness credibility and the weight to be given to testimony, and we "will not disturb a trial court's resolution of conflicting evidence that turns on the credibility or weight of the evidence." *Ennis v. Loiseau*, 164 S.W.3d 698, 706 (Tex. App.—Austin 2005, no pet.). If we determine that the trial court's findings of jurisdictional fact are supported by sufficient evidence, we decide as a matter of law whether those findings negate all bases for personal jurisdiction. *GJP, Inc.*, 251 S.W.3d at 871. In conducting our factual and legal sufficiency inquiry, we review all relevant evidence that was before the trial court. *Id.*

*(ii) General Principles*

A Texas court may exercise personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with constitutional due-process guarantees. *Moki Mac*, 221 S.W.3d at 574. The Texas long-arm statute authorizes the exercise of jurisdiction over nonresidents who do business in Texas. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990). "In addition to other acts that may constitute doing business, a nonresident does business" in Texas if he "commits a tort in whole or in part in [Texas]." Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2) (West 2008). The long-arm statute's broad "doing business" language allows the statute to reach as far as the federal constitutional requirements of due process will allow. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).

For purposes of asserting personal jurisdiction over a nonresident who does not consent to jurisdiction, federal constitutional due-process requirements are met when the nonresident defendant has established "minimum contacts" with the forum state and the exercise of jurisdiction is consistent with "traditional notions of fair play and substantial justice." *Moki Mac*, 221 S.W.3d at 575. A "minimum-contacts analysis focuses solely on the actions and reasonable expectations of the defendant." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790 (Tex. 2005). Minimum contacts are sufficient for personal jurisdiction when the nonresident defendant "'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Moki Mac*, 221 S.W.3d at 575 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (quoting *International Shoe Co. v. State of Washington*, 326 U.S. 310, 319 (1945))). In determining whether a nonresident defendant has

6

purposefully availed itself of the privilege of conducting activities in Texas, "only the defendant's contacts with Texas are relevant, not the unilateral activity of another party or third person." *Id.* Further, "the contacts relied upon must be purposeful, rather than random, fortuitous, or attenuated," and the "'defendant must seek some benefit, advantage, or profit by "availing" itself of the jurisdiction.'" *Id.* (quoting *Michiana*, 168 S.W.3d at 785).

A nonresident's contacts with Texas may give rise to two types of personal jurisdiction—general jurisdiction and specific jurisdiction. *BMC Software*, 83 S.W.3d at 795. General jurisdiction is established when a nonresident defendant's contacts with Texas are "continuous and systematic," regardless of whether the alleged liability arises from those contacts. *Id.* at 796. In contrast, specific jurisdiction, which is the only ground for personal jurisdiction alleged against Hendrickson in the present case, focuses on "the relationship among the defendant, the forum[,] and the litigation." *Moki Mac*, 221 S.W.3d at 575-76. "Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum." *BMC Software*, 83 S.W.3d at 796. Thus, for a Texas court to properly exercise specific jurisdiction over Hendrickson in the present case, (1) Hendrickson must have made minimum contacts with Texas by purposefully availing himself of the privilege of conducting activities here, and (2) Hendrickson's contacts with Texas must be substantially connected to the operative facts of this litigation. *See Moki Mac*, 221 S.W.3d at 576, 585. If both of these requirements are met, we then must determine if the exercise of specific jurisdiction over Hendrickson comports with "traditional notions of fair play and substantial justice." *Id.* at 575 (quoting *International Shoe*, 326 U.S. at 316).

7

*(iii) Hendrickson's Special Appearance*

Leesboro satisfied its initial jurisdictional burden by pleading sufficient allegations to come within the Texas long-arm statute. *See BMC Software*, 83 S.W.3d at 793. Specifically, Leesboro alleged that Hendrickson "committed fraud, fraudulent concealment, conversion, and other torts in Texas" when Hendrickson made "material representations to plaintiff in June 2008, at meetings in Rockdale, Texas, that Hendrickson [had signed a] performance guarantee agreement."

In response, Hendrickson filed a special appearance asserting that he was not subject to personal jurisdiction in Texas because he was a resident of Alabama, not Texas, does not have real estate, a bank account, or personal records in Texas, and has never entered into a contract or conducted any business with any Texas business, citizen, or resident. Hendrickson also asserted that he did not sign the performance guarantee as alleged by Leesboro. Hendrickson later filed an affidavit in support of his special appearance attesting to those same facts and additionally asserting that he never represented to Leesboro's agent that he had signed the performance guarantee. Hendrickson also offered the deposition testimony of Conrad Bar, another participant in the Rockdale meeting, who corroborated Hendrickson's affidavit testimony.

Leesboro responded to Hendrickson's special appearance and evidence by asserting that the trial court had personal jurisdiction over Hendrickson for the following reasons:

- Hendrickson attended meetings in Rockdale, Texas and made representations regarding the performance guarantee;

- Hendrickson committed torts in Texas; and

- Given Hendrickson's numerous, substantial contacts with Texas, the assertion of personal jurisdiction over him would not offend traditional notions of due process.

8

As evidence, Leesboro relied on Hendrickson's admission that he attended the Rockdale meeting and also on the deposition testimony of Daniel Lee, Leesboro's representative to whom Leesboro alleges Hendrickson made the misrepresentations at issue in this case. Leesboro also objected to portions of Hendrickson's affidavit on the grounds that they were impermissible factual and legal conclusions. After reviewing the pleadings, evidence, and arguments of counsel, the trial court sustained Hendrickson's special appearance and dismissed the claims against Hendrickson for lack of personal jurisdiction.

In granting Hendrickson's special appearance, the trial court did not make explicit findings of fact or conclusions of law. However, to hold that Hendrickson was not amenable to specific jurisdiction in Texas, the trial court impliedly determined that either (1) Hendrickson did not have minimum contacts with Texas by purposefully availing himself of the privilege of conducting activities in Texas, (2) Hendrickson's contacts with Texas were not substantially connected to the operative facts of the litigation, or (3) that its exercise of jurisdiction over Hendrickson would offend traditional notions of fair play and substantial justice. We must infer all findings of jurisdictional fact necessary to support the trial court's ruling. *BMC Software*, 83 S.W.3d at 795.

*(iv) Hendrickson's Contacts*

We begin our jurisdictional analysis by examining Hendrickson's alleged contacts with Texas. *See GJP, Inc.*, 251 S.W.3d at 868. Leesboro alleges that Hendrickson made the following contacts with Texas:

- "[S]ubstantial business activity" for Dixie in Pasadena, Texas and Rockdale, Texas;

- Frequent travel to and from Texas on Dixie's business;

- Attendance at a business meeting in Rockdale, Texas regarding Dixie's Alcoa plant contract; and

- A Representation to Daniel Lee, Leesboro's representative, at the Rockdale meeting, that Hendrickson has signed the performance guarantee.

Only the last of these alleged contacts could provide a basis for asserting specific jurisdiction over Hendrickson individually because it alleges that Hendrickson committed fraud while in Texas. *See Niehaus v. Cedar Bridge, Inc.*, 208 S.W.3d 575, 581 (Tex. App.—Austin 2006, no pet.) (explaining that individual acting in corporate capacity may be subject to personal jurisdiction for fraudulent or tortious actions). In contrast, the first three of these alleged contacts (collectively, "general business contacts") provide no basis for asserting specific jurisdiction over Hendrickson because they are *Dixie's* contacts with Texas, not Hendrickson's. *See, e.g.*, *International Shoe*, 326 U.S. at 316 ("Since the corporate personality is a fiction, although a fiction intended to be acted upon as though it were a fact, . . . it is clear that unlike an individual its 'presence' without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it."). A corporate representative's acts on the corporation's behalf are considered acts of the corporation itself, *Latcher v. Gratty, Inc.*, 107 S.W.3d 543, 545 (Tex. 2007), and, thus, a corporate representative's non-tortious acts on the corporation's behalf do not constitute a contact for purposes of personal jurisdiction over the corporate representative, *see, e.g.*, *Wolf v. Summers-Wood, L.P.*, 214 S.W.3d 783, 792 (Tex. App.—Dallas 2007, no pet.) (concluding that no

10

specific jurisdiction existed where officer contracted in corporate capacity). Leesboro does not assert that Hendrickson individually conducted business in Texas. Accordingly, Hendrickson's general business contacts with Texas as a representative of Dixie cannot provide a basis for specific jurisdiction over Hendrickson.

In contrast, Leesboro's allegation that Hendrickson committed fraud in Texas could provide a basis for exercising specific jurisdiction over Hendrickson because tortious or fraudulent contacts by a corporate representative are attributable to that representative individually. *See Niehaus*, 208 S.W.3d at 581; *see also Kelly*, 301 S.W.3d at 660 (explaining that specific jurisdiction over corporation's officers for alleged wrongdoing requires that plaintiff "plead and, when challenged by the defendant[], present evidence that the Officer[']s[] relevant acts (i.e., those connected to [plaintiff's] claims) occurred, at least in part, in Texas"). Further, Hendrickson's alleged contact—i.e., the alleged misrepresentation—is substantially connected to the operative facts of Leesboro's fraud claim. *See Moki Mac*, 221 S.W.3d at 585; *see also In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) (elements of fraud). Finally, if Hendrickson committed a tort in Texas, the exercise of specific jurisdiction over him would not normally offend traditional notions of fair play and substantial justice. *See Morris v. Kohls-York*, 164 S.W.3d 686, 694-95 (Tex. App.—Austin 2005, pet. dism'd) (concluding that the "allegation that the [defendants] committed torts while in Texas leads us to conclude that the exercise of specific jurisdiction over the [defendants] does not offend 'traditional notions of fair play and substantial justice'"). Thus, Leesboro's allegation that Hendrickson committed a tort at the Rockdale meeting is the only contact asserted by Leesboro that can provide a basis for exercising specific jurisdiction over Hendrickson.

11

Hendrickson, however, disputed that he made the alleged misrepresentation and provided evidence to the trial court supporting his contention. This presented a jurisdictional question of fact that the trial court had to resolve, *see BMC Software*, 83 S.W.3d at 795 ("[T]he trial court frequently must resolve questions of fact before deciding the jurisdiction question."), because it involved Hendrickson's alleged contacts with Texas, *see Michiana*, 168 S.W.3d at 785 (holding that only defendant's contacts with Texas are considered in determining purposeful availment). It was necessary for the trial court to resolve this question of fact because if Hendrickson did not make a misrepresentation to Leesboro, he individually did not contact Texas for jurisdictional purposes. Without a Texas contact, Texas courts cannot assert personal jurisdiction over a nonresident defendant. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he foreseeability that is critical to due process analysis . . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."). Therefore, because Hendrickson's alleged contact with Texas is the only jurisdictional inquiry at issue here and because the trial court found that it lacked personal jurisdiction over Hendrickson, we must infer that the trial court found that Hendrickson did not have sufficient minimum contacts with Texas because Hendrickson did not make the alleged misrepresentation. *See GJP, Inc.*, 251 S.W.3d at 870. Having determined that the trial court made that implied finding, we must now determine if that implied finding is supported by legally and factually sufficient evidence. *See Kelly*, 301 S.W.3d at 659 n.7.

*(v) Legal and Factual Sufficiency*

12

In support of his contention that he did not make a misrepresentation at the Rockdale meeting, Hendrickson offered into evidence his own affidavit and the deposition testimony of Conrad Bar, who also participated in the Rockdale meeting. Hendrickson's affidavit states "I have never represented to [Leesboro's representative] or anyone else that I signed the [performance guarantee]." Bar corroborated Hendrickson's affidavit by confirming that he did not hear Hendrickson make any representations regarding the performance guarantee during the Rockdale meeting. At deposition, Bar testified:

Q: Were you there for that whole meeting, the whole—there's a first meeting in the trailer?

A: Yes, sir.

Q: Were you there for that whole meeting?

A: I believe so.

Q: Were—did you ever see Mr. Hendrickson and [Leesboro's representative] go off for a private meeting outside your presence?

A: I did not.

Q: Did that occur?

A: Not that I saw.

Q: Were you there for the discussions that Mr. Hendrickson was involved in?

A: Yes.

Q: And did Mr. Hendrickson make any statement to [Leesboro's representative] that indicated that he had in any way signed [the performance guarantee]?

. . . .

A: I did not hear of any statements. I have no knowledge of that.

13

Q: You were there for the whole meeting?

A: Yes, sir.

Q: And you were there for the whole dinner at the piano bar?

A: Yeah, yes, sir.

Q: And did Mr. Hendrickson say anything to [Leesboro's representative] or anybody that indicated that he had signed the [performance guarantee]?

. . . .

A: Not to my knowledge.

. . . .

Q: Did you ever hear Mr. Hendrickson say anything that indicated that he had signed or agreed to the—the [performance guarantee]?

A: No.

Q: Did you have any reason to believe that he had?

A: No.

Leesboro offered the deposition testimony of Daniel Lee (Leesboro's representative) to support its contention that Hendrickson made the alleged representation at the Rockdale meeting:

Q: Aside from [the performance guarantee], do you have any writing that [Hendrickson] has signed guarant[ee]ing anything to Leesboro?

A: Actually, I tried, but he—he denied it. He said he already signed one guarant[ee], he is not going to sign another one.

Q: [Hendrickson] told you he signed a guarant[ee]?

A: Yes. Yes.

Q: And what guarant[ee] was he referring to?

14

A:   This one (indicating).

Q:   [The performance guarantee]?

A:   Yes.

Q:   [Hendrickson] told you he signed [the performance guarantee]?

A:   Yes.

Q:   When did he tell you that?

A:   On our first meeting, on or about the first week of June.

Considering the evidence in the light most favorable to the judgment and indulging every reasonable inference that would support the trial court's implied finding, we conclude that a reasonable and fair-minded person could conclude that Hendrickson made no misrepresentation at the Rockdale meeting regarding the performance guarantee. Accordingly, the evidence is legally sufficient to support the trial court's implied finding. Based on our review of all the evidence, we also conclude that the trial court's implied finding that Hendrickson made no representation regarding the performance guarantee was not against the great weight and preponderance of the evidence. While there was testimony from Leesboro's representative that Hendrickson made the representation to him at the Rockdale meeting, there is conflicting testimony suggesting that Hendrickson made no misrepresentation at that meeting. It is for the trial court, however, to resolve such conflicts. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696-97 (Tex. 1986). The court could have credited the testimony of Hendrickson and Bar to conclude that Hendrickson made no

15

representation. Accordingly, we conclude that the trial court's implied finding was supported by factually sufficient evidence.

*(vi) Jurisdictional Questions of Fact*

Leesboro argues that the question of whether Hendrickson made the representation is not a jurisdictional fact that the trial court can resolve at a special-appearance hearing because the existence of a misrepresentation is an "essential element" of Leesboro's fraud claims. Specifically, Leesboro contends that *Michiana* held that a judge should decide personal jurisdiction based on "physical facts" and not on whether tort liability exists, and, therefore, a trial court cannot determine any jurisdictional facts that may ultimately implicate the merits of the plaintiff's claim. Leesboro bases this assertion on the following language in *Michiana*:

> Business contacts are generally a matter of physical fact, while tort liability (especially in misrepresentation cases) turns on what the parties thought, said, or intended. Far better that judges should limit their jurisdictional decisions to the former rather than involving themselves in trying the latter.

*Michiana*, 168 S.W.3d at 791. Leesboro contends that the only relevant jurisdictional fact in the present case is that Hendrickson attended the meeting in Rockdale, Texas where the alleged misrepresentation occurred. Therefore, Leesboro argues, the trial court erred if it made a fact finding that Hendrickson did not make the representation and then used that finding to determine jurisdiction. We disagree with Leesboro's interpretation of *Michiana*.

First, the question of whether Hendrickson uttered the words in the Rockdale meeting involves a "physical" fact. Regardless, however, and crucial to our decision here, *Michiana* does

16

not stand for the proposition that a trial court may never consider facts that may affect ultimate liability when determining specific jurisdiction. *Michiana* stands for the proposition that a minimum-contacts analysis must focus only on the actions and reasonable expectations of the defendant, and that specific jurisdiction depends on whether the defendant had sufficient contacts with Texas, not on whether those contacts were tortious. *Id.* at 790-92. Further, *Michiana* recognizes that a trial court may have to resolve questions of fact in deciding personal jurisdiction issues, but cautions against unnecessary inquiries into liability issues. *See id.* Thus, while it is preferable to avoid factual inquiries involving underlying liability, a trial court must analyze the defendant's contacts with Texas, if any, and resolve any necessary factual questions relating to those contacts even if those questions may relate to liability.

Here, Hendrickson's only individual contact with Texas was the disputed misrepresentation to Leesboro's agent. As discussed previously, all of the other contacts with Texas, including his attendance at the meeting and any non-tortious acts or statements on behalf of Dixie, were Dixie's jurisdictional contacts with Texas because Hendrickson made them as Dixie's representative. *See Wolf*, 214 S.W.3d at 792. In other words, as long as Hendrickson was conducting Dixie business, he was surrounded by a protective "cocoon" that insulated him from making jurisdictional contact with Texas. But he could step out of that cocoon, and thus make jurisdictional contact with Texas, by, for example, committing a tort. So, although Hendrickson was physically present in Texas when he was conducting business for Dixie, his presence here did not satisfy jurisdictional contact requirements unless and until he made the alleged misrepresentation.

Accordingly, the alleged action by Hendrickson that gave rise to Leesboro's fraud claims is also the only basis for asserting specific jurisdiction over Hendrickson individually.

Because the parties provided conflicting evidence regarding whether the misrepresentation occurred, the trial court was required to resolve whether Hendrickson made the alleged statement in order to make its jurisdictional determination. Thus, the trial court had to make a factual determination or resolve a credibility issue regarding a matter that related to liability. To do otherwise—i.e., to refuse to consider whether Hendrickson made the alleged contact because it is also the basis for the underlying liability—would mean that Hendrickson's "purposeful availment depends on the form of [the] claim selected by the plaintiff." *See Michiana*, 168 S.W.3d at 791 (rejecting such a standard). Under that standard, a plaintiff could establish specific jurisdiction over a corporate representative conducting corporate business in Texas by simply alleging that the representative committed a tort while in Texas. But *Michiana* expressly rejects any specific jurisdictional analysis that is dependent on the *plaintiff's* actions or choices. *Id.* at 791-92; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State."). Accordingly, we hold that if the nonresident defendant's only jurisdictional contact with Texas is an alleged misrepresentation and the nonresident defendant denies that the misrepresentation occurred and provides evidence to support his denial, then the trial court must decide for jurisdictional purposes whether the misrepresentation—and therefore the nonresident's contact—occurred, regardless of whether that contact is also an element of liability. *See Kelly*,

18

301 S.W.3d at 659 ("Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations.").

Having determined that it was proper for the trial court to resolve the question of fact regarding Hendrickson's contacts with Texas and having determined that there is legally and factually sufficient evidence to support the trial court's implied finding that Hendrickson did not make the alleged representation, we conclude that, as a matter of law, Hendrickson lacked sufficient minimum contacts with Texas to support the assertion of specific jurisdiction. Accordingly, the trial court did not err in granting Hendrickson's special appearance and dismissing all claims against him. We overrule Leesboro's first four issues.

***Objections to Hendrickson's Affidavit***

In its final issue on appeal, Leesboro argues that the trial court erred in overruling its objections to certain statements in Hendrickson's affidavit because those statements are vague, "conclusory," and failed to set forth facts admissible in evidence. Specifically, Leesboro objects to the following statements:

- "I have never, in my individual capacity, entered into a contract or conducted any business with any Texas businesses, citizen or resident."

- "I did not sign, nor did I have any involvement with the document attached as Exhibit 'A' to Leesboro's Third Amended Petition."

- "I did not receive or accept payments from JNS Enterprises or its agents."

Assuming without deciding that the trial court erred by not striking these statements, that error was harmless because these statements do not affect the analysis of whether specific jurisdiction is proper

in this case. *See* Tex. R. App. P. 44.1; *see also Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989). To show harm from an evidentiary ruling, the complaining party usually must demonstrate that the judgment turns on the particular evidence excluded or admitted. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753-54 (Tex. 1995). A jurisdictional analysis turns on the nonresident defendant's contacts with Texas. *See Michiana*, 168 S.W.3d at 791-92. Here, Leesboro did not allege that Hendrickson conducted business in Texas. Instead, Leesboro alleged that Hendrickson was subject to specific jurisdiction based on Dixie's general business contacts and because Hendrickson committed a tort in Texas by making a misrepresentation about signing the performance guarantee. The statements to which Leesboro objects do not directly relate to either of those contentions. Rather, they address whether Hendrickson conducted business in Texas or had any "involvement" with the performance guarantee. Further, assuming that "involvement" with the performance guarantee also encompasses making the alleged misrepresentation, any error in admitting this statement is harmless because the information was cumulative of another affidavit statement to which Leesboro did not object. *See Reina v. General Accident Fire and Life Assurance Corp., Ltd.*, 611 S.W.2d 415, 417 (Tex. 1981) (holding that the "exclusion of cumulative evidence is not reversible error"); *Mauzy v. Sutliff*, 125 S.W.3d 71, 80 (Tex. App.—Austin 2003, pet. denied) (determining that cumulative nature of testimony renders error harmless); *see also Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004) ("The general rule is error in the admission of testimony is deemed harmless and is waived if the objecting party subsequently permits the same or similar evidence to be introduced without objection."). Thus, any error in admitting the affidavit testimony was harmless because it could not have resulted in an improper jurisdictional determination. Accordingly, we overrule Leesboro's fifth issue.

20

**CONCLUSION**

We hold that the trial court properly granted Hendrickson's special appearance because Hendrickson successfully negated specific jurisdiction by establishing that he had no individual contacts with Texas sufficient to meet the minimum contacts required by due-process concerns. We affirm the order of the trial court granting Hendrickson's special appearance and dismissing the claims against him for lack of personal jurisdiction.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed:   October 1, 2010