# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00543-CV

**Murchinson Ltd., Appellant**

**v.**

**Next Frontier Holdings, Inc. and Benuvia, Inc., Appellees**

---

**FROM THE 368TH DISTRICT COURT OF WILLIAMSON COUNTY**
**NO. 23-1914-C368, THE HONORABLE SARAH SOELDNER BRUCHMILLER, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

This interlocutory appeal arises from the trial court's denial of Murchinson Ltd.'s special appearance.[1] Next Frontier Holdings, Inc. and Benuvia, Inc. (collectively, Plaintiffs) sued Murchinson and others for business torts following a dispute involving a Round Rock-based pharmaceutical manufacturing facility and its assets. Murchinson filed a special appearance, which, after limited discovery and a hearing, the trial court denied. For the following reasons, we reverse the trial court's order and render judgment dismissing the claims against Murchinson.

---

[1] This opinion issues alongside a related appeal by co-defendant Todd C. Davis. *See Todd C. Davis v. Next Frontier Holdings, Inc.*, 03-24-00543-CV, (Tex. App.—Austin April 29, 2025, no pet. h.) (mem. op.). The two appeals arise from the same underlying case and share the same factual and procedural background.

## BACKGROUND

The underlying case concerns a dispute related to the acquisition of—and, following the buyer's default, subsequent resale of—a pharmaceutical manufacturing facility. Plaintiffs are companies that develop, manufacture, and synthesize FDA-approved compounds for pharmaceutical products. Next Frontier formed Benuvia, Inc. specifically to acquire two asset-holding entities, Benuvia Manufacturing, Inc. and Benuvia Therapeutics, LLC, from Benuvia Holdings, LLC[2] (a Delaware corporation with its principal place of business in Florida) for $44.9 million. The Benuvia assets include the Round Rock-based pharmaceutical manufacturing facility, which has approximately 70 employees, and its assets, plus intellectual property and FDA permits. The seller-financed acquisition closed in December 2021. Plaintiffs paid with $18 million in cash and a $26.9 million secured note, for which the acquired assets served as collateral. Todd C. Davis (a Florida- and Massachusetts-based manager of Benuvia Holdings) signed the purchase agreement on behalf of the seller, Benuvia Holdings, and Shannon Soqui (Next Frontier's executive chairman) signed on the buyer's behalf.

As part of the acquisition, Murchinson (a Toronto-based investment advisory fund) acted as "a subadvisor to certain indirect shareholders" of Benuvia Holdings. Cannvalate Pty., Ltd. (an Australian corporation with its principal place of business in Victoria, Australia) agreed to invest $5 million into Benuvia for a ten-percent ownership interest. However, due to a fluctuation in the exchange rate during the wire transfer, only $4,858,955.45 transferred to Benuvia Holdings such that there was a $141,044.55 shortfall which Cannvalate continued to owe to Benuvia. The

---

[2] We refer to plaintiff Benuvia, Inc. as "Benuvia" and defendant Benuvia Holdings, LLC as "Benuvia Holdings."

same day the acquisition closed, Benuvia signed a definitive agreement to merge with Jupiter Wellness, Inc., a Nasdaq-listed company, in a transaction worth approximately $250 million.

During the acquisition, Sudhanshu "Sud" Agarwal served as a consultant for Next Frontier, advising on technical, business, and FDA due-diligence matters. After the sale, Agarwal was appointed to Benuvia's board of directors and agreed to serve as its CEO, for which he accepted a compensation package including 10% equity in Benuvia. Agarwal is a Malaysian and Australian citizen, but he moved to Austin after accepting employment with Benuvia. During the acquisition and his time as Benuvia's CEO, Agarwal was also an owner of Cannvalate. After Agarwal joined Benuvia as CEO, Marilynn Martin, then Next Frontier's Business Development and Integration Officer, was promoted to his Chief of Staff.

Agarwal and Plaintiffs' relationship quickly deteriorated. Plaintiffs allege that soon after Agarwal assumed his new role, he "demand[ed]" that his stock ownership in Benuvia be increased from 10% to 50% and "threatened that, otherwise, he would 'drive Benuvia into a default' on the Secured Note"—which Plaintiffs maintain was "owed to Defendant Murchinson and Davis"—and "disrupt Benuvia's pending $250,000,000 merger with Jupiter Wellness, Inc." Plaintiffs represent that they twice came to preliminary agreements with Agarwal, in which he agreed to receive a stock-option grant representing additional equity in Benuvia, but Agarwal "changed his mind and demanded more stock options, and reiterated his threat that, otherwise, he would drive Benuvia into a default on the Secured Note and bankruptcy and disrupt Benuvia's merger with Jupiter Wellness." Plaintiffs characterize the negotiations as "volatile" and resulting in a "soured" relationship between Benuvia and Agarwal.

Meanwhile, Plaintiffs contend that beginning in January 2022, Agarwal and Martin collaborated with Davis, Muna Said (Benuvia Holdings' director), and Shiraz Noor (a Benuvia

3

Holdings employee) "to acquire Benuvia back from Next Frontier Holdings and to complete several related-party banking transactions with Agarwal that were not approved by the Benuvia Board and were against expressed instructions from [Plaintiffs] not to complete such transactions." Specifically, Plaintiffs assert that Benuvia informed Benuvia Holdings (through Davis) that all discussions regarding the secured note, potential refinancing or restructuring of the note, and all financial matters related to Benuvia should be conducted solely by Soqui on Benuvia's behalf. Benuvia insisted that Agarwal—then still Benuvia's CEO—should not be contacted to discuss any financing or capitalization matters.

Despite those instructions, however, Plaintiffs contend that Agarwal and Davis "began meeting in secret . . . to discuss the potential acquisition of [the Benuvia assets] by Agarwal from Benuvia Holdings after a default by Benuvia on the Secured Note." To that end, Plaintiffs allege that under Agarwal's direction, Benuvia missed the first installment payment on the secured note, after which Plaintiffs, Murchinson, and Benuvia Holdings agreed to defer and restructure the payments. Plaintiffs maintain that "[t]his negative event, combined with unauthorized and disparaging communications by Defendants" led the Jupiter Wellness merger "to fall apart," and on February 17, 2022, that merger officially terminated.

In their pleadings, Plaintiffs contend that Agarwal and Martin authorized, and Benuvia Holdings processed, approximately $415,000 of "unlawful payments" in Benuvia funds, including paying Cannvalate's $141,044.55 debt to Benuvia Holdings and amounts Agarwal personally owed to Benuvia Holdings. Plaintiffs maintain that the "final plan was two-fold: (1) sabotage the Jupiter Wellness merger, and (2) force Plaintiffs to default on the Note so that Benuvia Holdings could reacquire [the secured assets, including] the Round Rock facilities at a UCC sale." After discovering these actions, Plaintiffs state that they "immediately took action,"

4

including presenting the findings to the Benuvia board of directors, which terminated Agarwal as CEO on March 22, 2022, and suspended him from the board after he refused to resign.[3] Meanwhile, Benuvia signed a definitive agreement to merge with Pono Capital Corporation in a deal worth $440 million.

After Plaintiffs did not cure the defaults on the note, in April 2022, Benuvia Holdings sent Plaintiffs a notice of acceleration and notice of a UCC sale of the secured assets set for June 2022. Shortly after, Plaintiffs and Benuvia Holdings (through Davis) signed a forbearance agreement under which Benuvia Holdings agreed to restructure the remaining payments and withdraw the UCC sale. But on July 22, Benuvia Holdings sent a second notice of acceleration, which Plaintiffs claim forced Benuvia to terminate its planned merger with Pono Capital. Benuvia Holdings followed the notice of acceleration with a UCC sale on August 18, at which Benuvia Holdings reacquired Benuvia's assets from Plaintiffs for $8.1 million. Benuvia Holdings then sued Next Frontier in New York state court for the remaining balance on the note and obtained a judgment against Next Frontier for approximately $26 million.

Plaintiffs filed this lawsuit in September 2023, suing Davis, Agarwal, Benuvia Holdings, Murchinson, Cannvalate, and Martin for fraud, fraudulent inducement, fraud by nondisclosure, negligent misrepresentation, tortious interference with contract, civil conspiracy, and knowing participation in Agarwal's breach of fiduciary duty. All defendants (besides Agarwal, who has not been served) filed special appearances, and the trial court granted Cannvalate's and Martin's. The trial court held a joint hearing on the remaining special appearances by Benuvia

---

[3] Agarwal eventually resigned from the Benuvia board in June 2022.

Holdings, Murchinson, and Davis and denied all three. Benuvia Holdings, Murchinson, and Davis all separately appealed, but Benuvia Holdings later voluntarily dismissed its appeal.

**APPLICABLE LAW**

A Texas court has personal jurisdiction over a nonresident defendant if authorized by the Texas long-arm statute and the exercise of personal jurisdiction is consistent with federal and state constitutional guarantees of due process. *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016). The Texas long-arm statute authorizes the exercise of jurisdiction over a nonresident defendant doing business in Texas. Tex. Civ. Prac. & Rem. Code §§ 17.041–.045. Among other things, a nonresident "does business" in Texas if he "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state" or "commits a tort in whole or in part in this state." *Id.* § 17.042(1)–(2). The long-arm statute's "broad doing-business language allows [it] to reach as far as the federal constitutional requirements of due process will allow." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007) (internal quotation marks omitted).

The exercise of jurisdiction meets federal due-process standards when (1) the nonresident has minimum contacts with the forum state and (2) asserting jurisdiction complies with traditional notions of fair play and substantial justice. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013); *see International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "A defendant establishes minimum contacts with a state when it 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

6

"The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *American Type Culture Collections, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002).

A nonresident defendant's minimum contacts with the forum state can give rise to either general or specific jurisdiction. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).[4] Specific jurisdiction exists only if the alleged liability arises out of or is related to the defendant's contact with the forum. *Moki Mac*, 221 S.W.3d at 576. When specific jurisdiction is alleged—as it is here—the focus of the minimum-contacts analysis is on the relationship among the defendant, the forum, and the litigation. *See id.* at 575–76. Therefore, if the court concludes that a nonresident defendant has minimum contacts with Texas by purposefully availing itself of the privilege of conducting activities here, the court must then address whether the defendant's alleged liability arises out of or is related to those contacts. *Id.* at 579. When determining whether a nonresident purposefully availed itself of the privilege of conducting activities in Texas, we consider three factors: (1) "only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person"; (2) "the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated"; and (3) "the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction." *Moncrief Oil*, 414 S.W.3d at 151; *accord Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005).

---

[4] General jurisdiction is not at issue in this appeal. Although Plaintiffs originally contended that the trial court could exert general jurisdiction over Murchinson, they abandoned this argument at the special-appearance hearing and do not argue general jurisdiction on appeal.

## STANDARD OF REVIEW

"[T]he plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction." *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). Under the Texas long-arm statute, the plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute. *Id.* If the plaintiff does meet this initial burden, the burden shifts to the nonresident defendant to negate all jurisdictional bases properly pleaded by the plaintiff on either a factual or legal basis. *Id.* at 658–59. Factually, the defendant can present evidence that it has no contacts with Texas, thus disproving the plaintiff's allegations. *Id.* at 659. The burden then shifts back to the plaintiff to present evidence affirming its allegations. *Id.* On a legal basis, "the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Id.*

Whether a Texas court has personal jurisdiction over a nonresident defendant is a legal question that we review de novo. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021). However, trial courts must often resolve questions of fact before deciding jurisdictional issues. *Kelly*, 301 S.W.3d at 658. When the parties agree on the relevant facts, our review is de novo; however, if there is a factual dispute, appellate courts may be called upon to review the trial court's resolution. *American Type Culture Collection*, 83 S.W.3d at 806. When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by evidence. *Old Republic Nat'l Title Ins. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). We presume the trial court resolved all factual

8

disputes in favor of its judgment. *BMC Software*, 83 S.W.3d at 795. When the appellate record includes the reporter's and clerk's records, as it does here, the trial court's implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Id.* Here, Murchinson states that it "challenges all such presumed findings on all components of the special appearance analysis," which we construe as a challenge to both the legal and factual sufficiency of the trial court's implied findings.

Under a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding, indulging every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 827. We will sustain a legal-sufficiency challenge if the record reveals that the evidence offered to prove a vital fact is no more than a scintilla. *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014).

In a factual-sufficiency review, the appellate court considers and weighs all the evidence in the record, which includes all evidence before the trial court on the issue of personal jurisdiction. *GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 871 (Tex. App.—Austin 2008, no pet.). "Evidence is factually insufficient only if, in light of the entire record, a finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust." *Leesboro Corp. v. Hendrickson*, 322 S.W.3d 922, 926 (Tex. App.—Austin 2010, no pet.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). However, "[t]he trial court is the sole judge of witness credibility and the weight to be given to testimony, and we 'will not disturb a trial court's resolution of conflict evidence that turns on the credibility or weight of the evidence.'" *Id.* at 926–27 (citing *Ennis v. Loiseau*, 164 S.W.3d 698, 706 (Tex. App.—Austin 2005, no pet.)).

**DISCUSSION**

In five issues on appeal, Murchinson contends the trial court erred in denying its special appearance. First, Murchinson argues that the trial court erred in denying its special appearance because it contends that Plaintiffs did not plead sufficient allegations to bring Murchinson within the reach of Texas's long-arm statute. Second, Murchinson maintains that even if Plaintiffs did plead sufficient jurisdictional allegations, it met its burden to negate all bases of personal jurisdiction alleged by Plaintiffs. Third, Murchinson contends that Plaintiffs failed to offer evidence that would authorize the exercise of specific jurisdiction because it did not purposefully avail itself of "the laws or benefits" in Texas, and Plaintiffs' claims are not substantially connected to its contacts with Texas. Fourth, Murchinson argues that the exercise of personal jurisdiction over Murchinson does not comport with traditional notions of fair play and substantial justice. Finally, Murchinson challenges the factual and legal sufficiency of the trial court's implied findings authorizing the exercise of specific jurisdiction.

Texas Rule of Civil Procedure 120a requires a special appearance to be determined based on "the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." Tex. R. Civ. P. 120a(3). Therefore, we consider not only the allegations in Plaintiffs' petition, but also the parties' affidavits, exhibits, discovery responses, and testimony that support or undermine the allegations. *Enright v. Asclepius Panacea, LLC*, No. 03-15-00348-CV, 2016 WL 1048881, at *5 (Tex. App.—Austin Mar. 8, 2016, no pet.) (mem. op.) (citing *Kelly*, 301 S.W.3d at 658 n.4).

As a threshold matter, we note that we consider Murchinson's contacts on an aggregate basis because all of Plaintiffs' claims arise from the same alleged forum contacts. When

10

a plaintiff brings multiple claims, specific jurisdiction requires courts "to analyze jurisdictional contacts on a claim-by-claim basis"; however, "a court need not assess contacts on a claim-by-claim basis if all claims arise from the same forum contacts." *Moncrief Oil*, 414 S.W.3d at 150–51. Here, because Plaintiffs' claims—which are different varieties of business torts—all arise from actions surrounding the Benuvia acquisition and those facts will be the focus of the claims at trial, we assess Murchinson's forum contacts collectively, rather than on a claim-by-claim basis. *See Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 74 & n.13 (Tex. 2016).

First, Murchinson argues that Plaintiffs did not meet their initial burden to plead sufficient allegations to bring it within the reach of the Texas long-arm statute. *See* Tex. Civ. Prac. & Rem. Code § 17.042. Specifically, Murchinson maintains that Plaintiffs' references to Murchinson in their pleadings are limited to "conclusory, vague, and blanketed allegations directed to all or multiple defendants" and "without regard to the causes of action alleged."

However, Plaintiffs carried their initial burden to plead that Murchinson conducted business and committed torts in Texas. *See Kelly*, 301 S.W.3d at 658–59. In Plaintiffs' first amended petition—which includes a section specifically addressing the specific-jurisdiction argument as to all defendants—they state that the trial court has personal jurisdiction over all defendants because they "knowingly and intentionally committed a tort in whole or in part in Texas against a company located in Round Rock, Texas and/or because Defendants contracted by mail or otherwise to perform the contract in whole or in part in Round Rock, Texas." Plaintiffs assert that Benuvia Holdings "is controlled by Defendants Murchinson and Davis," and Murchinson, among other defendants, "controlled" Benuvia's operating accounts. They also allege that the secured note was "owed to Defendant Murchinson and Davis," and "Davis, Benuvia Holdings,

11

and Murchinson participated, directed, and furthered the scheme alleged herein primarily by communications directed at co-conspirator Defendants outside and in Texas, including Defendant Agarwal." Specifically, Plaintiffs allege that Murchinson, among other defendants, "visited Round Rock, Texas in order to purchase the Benuvia Assets, and for years directed and operated the Benuvia Assets and facilities located in Round Rock, Texas—both before and after the sale of the Benuvia Assets to Plaintiffs" and that Murchinson "directed" Davis to "approve[] all material transactions, contracts and events that occurred in the Benuvia Assets in Round Rock, Texas, and oversaw transactions involving the City and State of Texas." Plaintiffs further allege that after the sale, Murchinson and Davis proceeded "with an effort to manufacture a breach."

Plaintiffs' allegations that Murchinson conducted business and committed torts in Texas satisfies the initial pleading requirement. *See* Tex. Civ. Prac. & Rem. Code § 17.042; *Moncrief Oil*, 414 S.W.3d at 149 (concluding plaintiff's allegations that defendants committed torts in Texas by misappropriating alleged trade secrets at Texas meetings sufficient to meet initial burden); *Lombardo v. Bhattacharyya*, 437 S.W.3d 658, 679 (Tex. App.—Dallas 2014, pet. denied) (determining plaintiff's allegations that defendants "conducted ongoing business operations" and committed torts in Texas sufficient to satisfy initial burden). We overrule Murchinson's issue on this point.

Because Plaintiffs met their initial burden to plead allegations that bring Murchinson within the reach of Texas's long-arm statute, the burden shifted to Murchinson to negate all potential bases for personal jurisdiction invoked by the pleadings. *See Kelly*, 301 S.W.3d at 658. Murchinson attached to its special appearance and amended special appearance a declaration by its portfolio manager, Paul Zogala. Among other things, Zogala attested that:

12

- Murchinson has never been located in Texas.

- Murchinson had no partners, members, or employees that lived in Texas.

- Murchinson has never maintained an office or any other facility in Texas.

- Murchinson has never contracted by mail with a Texas resident, committed a tort in whole or in part in Texas, or recruited Texas residents, directly or through an intermediary located in Texas, for employment inside or outside of Texas.

- Murchinson has never been registered to do business in Texas, nor has it provided business services to customers in Texas.

- Murchinson has never maintained an agent who was authorized to received service of process in Texas.

- Murchinson has never paid or owed taxes in Texas.

- Murchinson has never owned any real or personal property in Texas.

- Murchinson has never held, controlled, or maintained any stock, securities, negotiable instruments, commercial paper, brokerage accounts, operating accounts, funding accounts, or bank accounts in Texas.

- Murchinson has never been a direct or indirect owner of Benuvia Holdings, LLC; Benuvia Manufacturing, Inc.; or Benuvia Therapeutics, LLC, nor has it even controlled the day-to-day operations of any of those entities or their respective employees.

- Murchinson has never entered or executed any contracts in Texas, nor has it filed, been a party to, or testified in any other lawsuits in Texas.

- Murchinson never traveled to Texas to prepare or finalize the Benuvia acquisition, plan any merger involving Benuvia and Jupiter Wellness or Pono Capital, or in connection with any purchase from or involving Insys Therapeutics, Inc. or Insys Pharmaceuticals [the Benuvia asset owners before Benuvia Holdings].

- Murchinson never participated in any virtual conference or traveled to Texas to discuss a takeover of the Benuvia assets.

- Murchinson never had control over Benuvia's bank accounts.

- Murchinson never communicated with Agarwal.

- Murchinson was not one of the sellers of the Benuvia assets.

- Murchinson never directed Davis regarding any transactions, contracts, or events involving Plaintiffs, nor did it oversee any transactions involving Texas.

Zogala admitted he traveled to Round Rock between December 5-8, 2021, "to meet with investors who were potentially interested in purchasing Benuvia Manufacturing, Inc. and Benuvia Therapeutics, LLC," but denied that anyone on Murchinson's behalf was present in Round Rock to "prepare and finalize" the Benuvia acquisition.[5] Zogala also attested that in November 2022, Mark Lichtenstein, a Murchinson employee, made a visit of under three days "to visit the Round Rock facility and advise investors on the status of business operations there."

By presenting this evidence in its special appearance, Murchinson met its burden to negate all the grounds for jurisdiction that Plaintiffs alleged, and we sustain its issue on this point. *See Kelly*, 301 S.W.3d at 658. Thus, the burden shifted back to Plaintiffs to respond with their own evidence affirming the allegations in the petition. *See id.* at 659. In opposing the special appearance, Plaintiffs included, among other documents, Murchinson's responses to discovery, the sale documents for the Benuvia assets, the secured note and security agreement, and the forbearance agreement. In Murchinson's responses to interrogatories, it affirmed Zogala's and Lichtenstein's trips to the Round Rock facility but otherwise stated that besides these two visits, Murchinson did not visit Texas within the 10-year period prior to Plaintiffs filing their lawsuit. Murchinson also stated that its role in the sale of the Benuvia assets between December 2021 to August 2022 "was limited to that of a subadvisor to certain indirect shareholders of Benuvia Manufacturing Inc. and Benuvia Therapeutics, LLC."

---

[5] Zogala also admitted to two visits to the Round Rock facility in February and May 2023 that he made "in [his] individual capacity in order to consider a position to join the board of a subsidiary of Benuvia Holdings, LLC" but emphasized that these visits were not on Murchinson's behalf.

14

The sale documents for the Benuvia assets included a purchase-and-sale agreement and a membership-interest assignment agreement. Both reflect that the agreements are expressly between Next Frontier and Benuvia Holdings and describe, among other things, a lease of real property between Fog Break, Ltd. and Benuvia Therapeutics, LLC and Benuvia Manufacturing, Inc. The secured note reflects a $26.9 million loan with interest from Benuvia Holdings (defined as the "Holder") to Next Frontier (defined as the "Maker"). Among the terms outlined in the note, there is no mention of Murchinson or any interest it has in the note or ability it has to enforce its terms. Likewise, Murchinson is not a party to or mentioned in the security agreement or the forbearance agreement, nor is it listed as a debtor in the documents accompanying the UCC sale.

Based on this evidence, in addition to the pleadings, the parties' briefs, and a hearing, the trial court denied Murchinson's special appearance. *See* Tex. R. Civ. P. 120a(3). Since the trial court did not issue findings of fact or conclusions of law in this case, we construe Murchinson's argument that it is not subject to specific jurisdiction in Texas as an attack on the legal and factual sufficiency of the evidence to support the trial court's implied findings. *Eurotainer US, Inc. v. Goldstein*, No. 01-22-00030-CV, 2023 WL 4003514, at *4 (Tex. App.—Houston [1st Dist.] June 15, 2023, pet. denied) (mem. op.) (citing *Huynh v. Nguyen*, 180 S.W.3d 608, 620 (Tex. App.—Houston [14th Dist.] 2005, no pet.)).

Under the specific-jurisdiction inquiry, we consider whether Murchinson, as a nonresident defendant, purposefully availed itself of the privilege of conducting business activities in Texas. *See Old Republic*, 549 S.W.3d at 559. We look to Murchinson's contacts with Texas, determining whether its contacts are purposeful, rather than random, fortuitous, or attenuated, and whether Murchinson sought a benefit, advantage, or profit by availing itself of the jurisdiction. *See Moki Mac*, 221 S.W.3d at 575. We also determine whether Plaintiffs' case "arises from or is

15

related to" Murchinson's purposeful contacts with Texas. *See Moncrief Oil*, 414 S.W.3d at 150. This standard does not require proof that Plaintiffs would have no claim "but for" Murchinson's forum contacts or that its forum contacts were a proximate cause of their injuries; instead, we ask what Plaintiffs' claims are principally concerned with, whether Murchinson's forum contacts will be the focus of the trial, and whether the contacts are related to the operative facts of Plaintiffs' claims. *See TV Azteca v. Ruiz*, 490 S.W.3d 29, 52–53 (Tex. 2016).

The parties dispute whether Murchinson was owed money on the secured note. Plaintiffs contend that Soqui's declaration that the note was "owed to Defendant Murchinson and Davis" is sufficient to support the trial court's implied finding resolved in its favor—that is, that the trial court resolved the fact issue in Plaintiffs' favor and concluded the note was owed to Murchinson as a forum contact that supports the exercise of personal jurisdiction. *See BMC Software*, 83 S.W.3d at 795 ("When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied."). However, Murchinson has challenged the trial court's implied findings. *See id.* In light of the record—which contains the note itself and reflects that Murchinson was not a holder—the implied finding that the note was owed to Murchinson cannot withstand a sufficiency challenge. *See Ennis*, 164 S.W.3d at 706 (noting that appellate courts "consider the entire record and conduct an ordinary sufficiency review" when determining whether evidence is sufficient to support trial court's factual determinations).

Plaintiffs have not included anything in the record beyond Soqui's statement that supports the conclusion that the note was owed in part to Murchinson. Soqui's testimony, which was based on his personal knowledge as Next Frontier's chairman and records custodian, in which he identified the note and recited that it was "owed to Defendant Murchinson" is not

conclusory. *See Roper v. CitiMortgage, Inc.*, No. 03-11-00887-CV, 2013 WL 6465637, at *13 (Tex. App.—Austin Nov. 27, 2013, pet. denied) (mem. op.) (discussing non-conclusory statements in summary-judgment context). But without more than Soqui's statement and in the face of the note, security agreement, purchase documents, forbearance agreement, and UCC sale documents—none of which reflect any interest by Murchinson in the note—we cannot conclude that the trial court accepted Soqui's statement, disregarded the remaining evidence to the contrary, and impliedly found that Murchinson was a holder of the $26.9 million secured note. In other words, here, we set aside the trial court's implied finding only because "it is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust." *Ennis*, 164 S.W.3d at 706; *accord Leesboro Corp.*, 322 S.W.3d at 926 ("Evidence is factually insufficient only if, in light of the entire record, a finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust." (citing *Cain*, 709 S.W.2d at 176)); *see also Booth v. Kontomitras*, 485 S.W.3d 461, 485 (Tex. App.—Beaumont 2016, no pet.) (finding insufficient record evidence to support implied finding that contract was performed in Texas when plaintiff alleged individual defendants "pursued and solicited money from her in Texas" but contracts were between plaintiff and corporation). The evidence is also legally insufficient, as it conclusively establishes the opposite of the implied finding that Murchinson is a holder of the note. *See City of Keller*, 168 S.W.3d at 810.

Likewise, though Plaintiffs alleged that Murchinson "controlled" Benuvia Holdings, there is no evidence to support any implied findings by the trial court that Murchinson controlled Benuvia Holdings or was Benuvia Holdings' alter ego to support jurisdiction. *See BMC Software*, 83 S.W.3d at 799 (discussing lack of evidence to support implied finding of alter ego in general-jurisdiction context); *cf. State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 414 (Tex.

17

2023) (concluding foreign defendant had minimum contacts with Texas by direct and indirect contractual control over domestic entities). The lack of any evidence on this point results in legally and factually insufficient evidence to support jurisdiction on this basis.

The remaining jurisdictional allegations arise from undisputed facts. First, it is undisputed that Murchinson's employees traveled to the Round Rock facility twice: one visit by Zogala before Next Frontier purchased the Benuvia assets and one visit by Lichtenstein after the assets were reacquired by Benuvia Holdings following the UCC sale. It is also undisputed that Murchinson served in an advisory role—though it labels its role as a "subadvisor"—to certain "indirect" shareholders of Benuvia Manufacturing Inc. and Benuvia Therapeutics, LLC. Murchinson argues that these contacts, standing alone, do not constitute minimum contacts sufficient to exercise personal jurisdiction. We agree.

There is no substantial relationship between the Murchinson employees' two visits to the facility and the operative facts of this litigation. *See Horowitz v. Berger*, 377 S.W.3d 115, 127 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Moki Mac*, 221 S.W.3d at 578). Plaintiffs asserted claims against Murchinson for fraud, negligent misrepresentation, tortious interference with contract, civil conspiracy, and knowing participation in Agarwal's breach of fiduciary duty. But nowhere in Soqui's affidavit or any other evidence in opposition to Murchinson's special appearance have Plaintiffs identified a representation, omission, or act by Murchinson, given either at one of its two visits to the Texas facility or in its capacity as a "subadvisor" to investors. *See Steamboat Cap. Mgmt., LLC v. Lowry*, No. 01-16-00956-CV, 2017 WL 5623414, at *15 (Tex. App.—Houston [1st Dist.] Nov. 21, 2017, no pet.) (mem. op.) (noting that when case involves multiple defendants, each defendant's forum contacts must be examined separately (citing *Morris v. Kohls-York*, 164 S.W.3d 686, 693 (Tex. App.—Austin 2005,

18

pet. dism'd))); *cf. ERC Midstream LLC v. American Midstream Partners, LP*, 497 S.W.3d 99, 110-11 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (concluding defendant had minimum contacts with Texas when defendant did not negate plaintiffs' allegation that he made representation forming basis for plaintiff's claim during meeting in Texas to solicit business).

Instead, Plaintiffs focus on the fact that their allegations concern the Benuvia assets, including the Round Rock-based facility, and Murchinson does not dispute that it visited the facility twice. However, there was no evidence establishing that Murchinson had an ownership interest in any of the Benuvia assets, including the facility. *See Horowitz*, 377 S.W.3d at 128; *compare Retamco Operating*, 278 S.W.3d at 339–40 (finding purposeful availment when defendant "purposefully took assignment of Texas real property"), *with Curocom Energy LLC v. Young-Sub Shim*, 416 S.W.3d 893, 897 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("A defendant's conversation in another country about real property in the forum state, however, is not a sufficient contact if the defendant holds no interest in the property."). That is, there is no evidence that Murchinson sought "some 'benefit, advantage, or profit' by availing itself of the forum," and thus there is legally and factually insufficient evidence to support jurisdiction on this basis. *Moncrief Oil*, 414 S.W.3d at 154 (citing *Michiana*, 168 S.W.3d at 785).

In sum, we conclude Murchinson negated Plaintiffs' jurisdictional allegations, and the evidence does not support implied findings from which the trial court could have concluded that the minimum-contacts requirements have been satisfied. Because we conclude Murchinson lacks minimum contacts with Texas to support the trial court's exercise of personal jurisdiction, we sustain Murchinson's issue on this point. We do not reach its remaining issue regarding traditional notions of fair play and substantial justice. *See Peredo v. M. Holland Co.*, 310 S.W.3d 468, 476 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

## CONCLUSION

We reverse the trial court's order denying Murchinson's special appearance and render judgment granting the special appearance and dismissing the claims against Murchinson.

_____

Rosa Lopez Theofanis, Justice

Before Justices Triana, Theofanis, and Crump

Reversed and Rendered

Filed:   April 29, 2025